STATE of Minnesota, Respondent,

v.

Michael Timothy GORMAN,
Petitioner, Appellant.

No. C6–94–1650.

Supreme Court of Minnesota.

April 19, 1996.

Review of Court of Appeals.

Mark P. Essling, St. Paul, for appellant.

Darrell C. Hill, Ramsey County Attys. Office, St. Paul, for respondent.

Heard, considered and decided by the court en banc.

## OPINION

GARDEBRING, Justice.

Appellant, Michael Timothy Gorman, seeks review of his sentence for conviction of second degree felony murder and first degree manslaughter arising out of a barroom fight. Minn.Stat. §§ 609.19(2) and 609.20(2) (1994). He was sentenced on the murder charge, which, with his criminal history, carried a presumptive sentence of 225 months in prison.[1] However, the trial court, relying on both the presence of aggravating circum-

---

**1.** The Minnesota Sentencing Guidelines are designed to imbue the practice of sentencing with a measure of consistency and rationality and a respect for the realities of the resources available to corrections officials. When it created the sentencing guidelines system, the legislature also established the Sentencing Guidelines Commission and charged it with the creation of standards to guide sentencing discretion. Minn.Stat. § 244.09 (1994). The Sentencing Guidelines Commission created a grid providing a simple means of combining criminal history and offense severity to reach a "presumptive" sentence. Minn. Sent. Guidelines § I (1994). The trial judge should impose the presumptive sentence, unless substantial and compelling circumstances are present to justify a departure from that presumptive sentence. *Id.* at II.D. Accordingly, the commission developed a nonexclusive list of factors that may be used to justify a departure. *Id.* at II.D.2.b. If a judge decides to depart, he or she must provide written reasons specifying the nature of the circumstances prompting the departure. *Id.* at II.D.

stances and on the sentencing provisions of the career offender statute, Minn.Stat. § 609.152, subd. 3 (1994), sentenced appellant to 450 months, a double durational departure. He appealed to the court of appeals, which held that the sentence as a career offender was proper despite the lack of similarity among his prior offenses. Appellant argues to this court that the trial court abused its discretion when it sentenced him to 450 months and that it erroneously designated him a career offender. We conclude that appellant was properly sentenced as a career offender.

On October 15, 1993, appellant was present in a St. Paul bar. At some point during the evening, appellant misplaced his wallet containing some $1,800 in cash. To recover the wallet, he announced his intention to search every patron in the bar and, assisted by three friends, began to do so. Witnesses testified at trial that the victim, who was in the bar that evening playing pool, had no objection to being searched. Appellant searched the victim and then, without apparent provocation, punched him in the mouth. The victim fell backwards to the floor, hitting his head on the bar's concrete floor. Appellant knelt over the victim, holding his shirtfront in one hand, with his other hand cocked back as if to deliver another blow. The victim began to make gurgling noises. One of the patrons shouted to appellant to leave the victim alone, that he was out, and that she was telephoning the police. At this point, appellant and his three friends left the bar.

Bar patrons attending to the unconscious victim testified that he was having trouble breathing, continued to make gurgling sounds, and did not respond to their attempts to revive him. Paramedics took him to St. Paul Ramsey Hospital where emergency room personnel diagnosed him as comatose. He remained comatose until he died on October 17th. The medical examiner testified at trial that the victim sustained a fractured skull and "contra coup" injury, indicating that the brain bounced from the impact with the concrete floor, smashed against the opposite side of the skull, and returned to crash into the impact site, thereby leaving a bruise on both the front and back of the brain.

In this case we consider the reach of the career offender statute, which provides:

[w]henever a person is convicted of a felony, and the judge is imposing an executed sentence based on a sentencing guidelines presumptive imprisonment sentence, the judge may impose an aggravated durational departure from the presumptive sentence up to the statutory maximum sentence if the judge finds and specifies on the record that the offender has more than four prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct.

Minn.Stat. § 609.152, subd. 3 (1994). Thus, sentencing under the career offender statute requires that:

1) the crime for which sentence is imposed must be a felony;

2) the defendant must possess at least five prior felony convictions; and

3) the crime must have been committed as part of a pattern of criminal conduct.

Minn.Stat. § 609.152, subd. 3 (1994).

Appellant argues that, while he admittedly has an extensive criminal history, he does not come within the purview of the career offender statute. Appellant's criminal record includes two felony convictions for third degree burglary, Minn.Stat. § 609.582, subd. 3 (1994), and one each for receiving stolen goods, Minn.Stat. § 609.53, subd. 1 (1994), possession of a stolen gun, Minn.Stat. § 624.713, subd. 1(j)(1) (1994), and third degree assault, Minn.Stat. § 609.223, subd. 1 (1994). Appellant also has a number of misdemeanor convictions, including three for fifth degree assault, Minn.Stat. § 609.224, subd. 1, 2 (1994), one for fourth degree assault, Minn.Stat. § 609.2231, subd. 4 (1994), and two for disorderly conduct, Minn.Stat. § 609.72, subd. 1 (1994). Both disorderly conduct convictions involved assaultive behavior; one of them resulted from a bar fight originally charged as fifth degree assault.

■ Appellant first asserts that he does not have the requisite number of felonies to qualify as a career offender because one of

his prior convictions, for possession of a stolen gun, was not a felony. He bases this contention on the operation of Minn.Stat. § 609.13, subd. 1(1) (1994), which provides that any crime for which the imposed sentence is 90 days or less will be deemed a misdemeanor. *Id.* Because he *served* only 90 days for his conviction for possession of a stolen gun, appellant contends it must be converted to a misdemeanor. This argument has no merit. The statute indeed may transform any conviction for which the imposed sentence was 90 days or less into a putative misdemeanor, but appellant's conviction resulted in a sentence of 18 months, of which all but 90 days was stayed. The conviction was, and remains, a felony.

■ However, appellant makes two more substantive arguments that he does not come within the career offender statute. He argues first, that the career offender statute was intended to apply only to individuals who earn a substantial portion of their income from a pattern of criminal property offenses and, second, that his conduct is not within the meaning of "a pattern of criminal conduct." Minn.Stat. § 609.152, subd. 3 (1994).

■ Our analysis begins with the language of the statute. Appellant's insistence that the statute reaches only those criminals whose conviction records reveal how they earn their income (*e.g.*, the professional burglar) is misplaced, when considered in light of the plain language of the statute. The canons of construction provide that

> [w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1994). Further, we reach beyond the language of a statute only when it is ambiguous. *McCaleb v. Jackson,* 307 Minn. 15, 17 n. 2, 239 N.W.2d 187, 188 n. 2 (1976); *Arlandson v. Humphrey,* 224 Minn. 49, 54–55, 27 N.W.2d 819, 823 (1947).

The career offender statute, on its face, includes no requirement that the sentencing court reach any conclusion as to the defendant's sources of income. However, even were we to look to legislative history on this issue, we would reject appellant's argument because the legislature, in 1992, specifically repealed the type of requirement he would have us read into the statute. Prior to 1992, the statute contained language specifying that the offense at issue be part of a pattern of criminal conduct "from which a substantial portion of the offender's income was derived." Minn Stat. § 609.152, subd. 3 (1990). With the repeal of this section, the legislature removed the basis for appellant's argument.

Thus, in this case, we are left with the key issue of the meaning of the term "pattern of criminal conduct." Appellant argues that the present offense was "utterly unrelated" to his prior felony convictions, noting in particular that his present conviction is for second degree unintentional murder and that it is impossible to establish a "pattern" of unintentional conduct.

■ The interpretation of the word "pattern" in the career offender statute is a matter of first impression for this court.[2] This is not, however, the first time this court or other courts have wrestled with a definition of the word "pattern." These prior efforts may guide our interpretation of the present statute. *See Minnesota Wood Specialties v. Mattson,* 274 N.W.2d 116, 119 (Minn.1978) (terms that have been judicially

2. The court of appeals has considered this statute in two recent cases. In *State v. Flemino,* 529 N.W.2d 501, 503–04 (Minn.App.1995), *rev. denied* (Minn. May 31, 1995), the court determined that the proof of the "pattern" did not require that the state demonstrate that previous offenses were similar. The court reasoned that the legislature could not have intended that offenders committing dissimilar, but severe offenses would escape sentence enhancement, while those convicted of similar, but more minor offenses would come within the ambit of the statute. The *Flemino* court also noted that "career suggests a timeframe beyond a temporary activity or pastime" and thus that "the statute simply targets offenders whose primary occupation is committing crimes or whose lifestyle is one of criminality." In *State v. Hendrickson,* 528 N.W.2d 263, 267–68 (Minn.App.1995), *rev. denied* (Minn. Apr. 27, 1995), the court of appeals ruled that a defendant's prior convictions for felony theft and fraud comprised a "pattern of criminal conduct," but did not attempt to define the terms.

defined should generally be used in the same sense in subsequent statutes involving the same subject matter).

In *State v. Robinson*, 539 N.W.2d 231 (Minn.1995), this court held that a pattern was "a regular, mainly unvarying way of acting or doing." *Id.* at 237; *see also State v. Grube*, 531 N.W.2d 484 (Minn.1995). At the federal level, the Eighth Circuit Court of Appeals considered a sentencing guideline derived from a federal statute similar to Minnesota's career offender statute. *United States v. Oliver*, 908 F.2d 260, 265–66 (1990); *see* U.S.S.G. 4B1.3, 28 U.S.C. § 994(i)(2) (1988). There the court observed that the original statutes defined the same phrase, "pattern of criminal conduct," as criminal acts that have "the same or similar purposes, results, participants, victims, or methods of commission, * * * or otherwise [are] interrelated by distinguishing characteristics" and are not isolated events. *Oliver*, 908 F.2d at 265–66.

■ Further, our approach to the admission of prior "bad act" evidence under Minn. R. Evid. 404(b) provides an analogy on the degree of similarity necessary to link a current crime to past misconduct. Evidence of prior convictions, or other "bad acts," is usually inadmissible unless it is offered under one of the recognized exceptions to this rule of inadmissibility. *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). Those exceptions generally require similarity between the current and the past act as to defendant's motive, opportunity, intent, preparation, plan, knowledge, or identity. *See* Minn. R. Evid. 404(b) (1995). It is apparent then, that when evidence of prior "bad acts" is admissible against a defendant, the evidence must be such that a factfinder can draw an inference of a possible pattern coupling the two crimes together in terms of the manner, intent, motive or other characteristic.

"Pattern" has also been statutorily defined. The Minnesota legislature has defined the term "pattern of criminal activity" in the context of the state Racketeer Influenced and Corrupt Organizations statute to mean acts "related to one another through a common scheme or plan or shared criminal pur-

pose." Minn.Stat. § 609.902, subd. 6(3)(i) (1994). Similarly, the U.S. Supreme Court, construing the federal RICO act, observed that the existence of a pattern involves the relationship that the constituent individual acts bear to each other or to the presence of an organizing principle. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) .

■ We believe that these definitions all speak to a common understanding of the word "pattern." A pattern is the organizing principle or relationship binding certain things, in this case incidents of criminal conduct, together. Such a "pattern of criminal conduct" may be demonstrated by proof of criminal conduct similar, but not identical, in motive, purpose, results, participants, victims or other shared characteristics.

■ There remains, however, the question of which acts of the defendant should be examined for the presence of the necessary "pattern." Appellant argues that it can only be found in the defendant's prior felonies. The state counters that the statute mentions a pattern of criminal, not felony, conduct. Nothing in the statute limits the sentencing court's consideration to prior felony convictions, nor even to convictions at all. Therefore, based again upon the plain language of the statute, we hold that a "pattern of criminal conduct" may be demonstrated by reference to past felony or gross misdemeanor convictions or by proof, through clear and convincing evidence, of prior, uncharged acts of criminal conduct, where such acts are similar to the present offense in motive, purpose, results, participants, victims or other characteristics.

■ Applying this newly established rule to the facts of this case, we conclude that a pattern of criminal conduct is clearly established. While appellant argues that the present conviction for unintentional second degree murder bears no similarity to prior felony convictions for burglary and possession of stolen property, the court may, of course, also rely on his past convictions for third degree assault, fourth degree assault and fifth degree assault, along with two convictions for disorderly conduct, which also

involved assaultive behavior.[3] The similar characteristic in these crimes is, of course, the attack upon other persons. We hold, therefore, that the trial court properly sentenced him as a career offender under Minn. Stat. § 609.152, subd. 3 (1994).[4]

Affirmed.

---

**3.** Appellant also has a conviction for burglary. Even as to the burglary, we have said, "Whenever [a defendant] commits a burglary it is reasonably foreseeable that [he or she] might encounter some person or that the burglary might be interrupted by the police or someone else," *State v. Filippi*, 335 N.W.2d 739, 742 (Minn.1983), thus running the risk of personal violence, even where none actually occurs.

**4.** Because we conclude that appellant was properly sentenced under the career offender statute, we do not consider whether aggravating circumstances were present to otherwise justify the departure.