STATE of Minnesota, Respondent,

v.

John C. HENDERSON, Appellant.

No. A03–1898.

Supreme Court of Minnesota.

Dec. 1, 2005.

Cathryn Middlebrook, Asst. State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Asst. County Attorney, Minneapolis, MN, for respondent.

## OPINION

MEYER, Justice.

Appellant John C. Henderson seeks review of an unpublished court of appeals decision affirming his 144–month sentence for first-degree burglary as a career offender under Minn.Stat. § 609.1095 (2004). Henderson argues that his Sixth Amendment right to a jury trial was violated when the district court imposed a sentence that was an upward durational departure under the career offender statute, because the sentencing judge found that Henderson's offense was part of a pattern of criminal conduct. We reverse and remand for resentencing.

On December 6, 2002, Henderson was arrested and charged three days later with first-degree burglary. He entered a guilty plea at the beginning of his trial on May 28, 2003. The presumptive sentence for a conviction of first-degree burglary for Henderson under the Minnesota Sentencing Guidelines was 108 months. The district court departed and imposed a sentence of 144 months under the career offender statute, Minn.Stat. § 609.1095, after finding that Henderson had five or more prior felony convictions and that the present offense was committed as part of a pattern of criminal conduct.

Henderson appealed the durational departure to the court of appeals, arguing that his prior convictions did not establish a pattern of criminal conduct sufficient to sentence him as a career criminal. After this case was submitted to the court of appeals, the United States Supreme Court decided *Blakely v. Washington,* which held that a defendant's Sixth Amendment right to a jury trial is violated when an upward durational departure is added to a presumptive sentence based on findings of fact not made by a jury. *Blakely v. Washington,* 542 U.S. 296, 303–05, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The court of appeals affirmed Henderson's sentence, holding that the *Blakely* rule does not apply to upward departures under the career offender statute because the determination of a "pattern of criminal conduct" is a legal conclusion, not a finding of fact. *State v. Henderson,* No. A03–1898, 2004 WL 1925395 at *2 (Minn.App. Aug.31, 2004).

### I.

The state argues that Henderson forfeited consideration of his *Blakely* claim on appeal by failing to raise it in the district court. We ordinarily do not decide issues raised for the first time on appeal, even constitutional questions of criminal procedure. *State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989). We may address such issues, though, when the interests of justice require their consideration and doing so would not work an unfair surprise on a party. *Id.; see* Minn. R.Crim. P. 28.02, subd. 11; 29.04, subd. 11.

There are recognized circumstances in which the defendant's failure to raise a sentencing issue at the time sentence is imposed does not waive consideration of the issue on later review. *See State v. Fields,* 416 N.W.2d 734, 735 (Minn.1987) (allowing challenge to durational sentencing departure following revocation of stayed sentence); *State v. White,* 300

Minn. 99, 105–06, 219 N.W.2d 89, 93 (1974) (holding that statutory prohibition against double punishment for offenses committed in single behavioral incident cannot be waived); Minn. R.Crim. P. 27.03, subd. 9 (correction of unlawful sentence at any time); Minn.Stat. § 590.01, subd. 1 (2004) (postconviction remedy).[1] In other circumstances we have held that by failing to object at sentencing the defendant forfeited the right to consideration of a sentencing issue on appeal. *State v. Lopez–Solis,* 589 N.W.2d 290, 293 n. 3 (Minn.1999) (reasonableness of prosecution costs); *Blondheim v. State,* 573 N.W.2d 368, 368–69 (Minn.1998) (mandatory minimum fine); *see also State v. Leja,* 684 N.W.2d 442, 447 n. 2 (plurality opinion), 457 n. 3 (Blatz, C.J., dissenting) (Minn.2004) (together holding that failure to raise *Apprendi/Blakely* challenge to sentence on appeal waived issue).

In the interests of justice, we exercise our discretion to address Henderson's claim that his career offender sentence violates the holding in the *Blakely* decision. We do so because of the importance of determining *Blakely*'s applicability to upward durational departures under the career offender statute, an issue that affects numerous cases statewide.

## II.

We turn to the question of whether the district court could constitutionally impose an upward durational departure based on its determination that Henderson is a career offender under Minn.Stat. § 609.1095, subd. 4 (2004). To be sentenced as a career offender, the offender must have "five or more prior felony convictions" and must have committed the present offense as part of a "pattern of criminal conduct." *Id.* In this case,

Henderson had previously been convicted of third-degree criminal sexual conduct (Minn.Stat. § 609.344 (2004)); felony theft from person (Minn.Stat. § 609.52, subd. 2 (2004)); second-degree burglary (Minn. Stat. § 609.582, subd. 2(a) (2004)); theft of a motor vehicle (Minn.Stat. § 609.52 subd. 1(10) (2004)); receiving stolen goods (Minn.Stat. § 609.53, subd. 1 (2004)); and first-degree burglary (Minn.Stat. § 609.582, subd. 1(a) (2004)).

Henderson does not dispute that the record establishes that he had five or more prior felony convictions. He argues that whether his present offense was committed as part of a pattern of criminal conduct is a finding of fact that must be made by a jury. The court of appeals characterized the pattern of criminal conduct conclusion as a legal one and determined that the district court had not abused its discretion in concluding that Henderson fit the pattern of a career criminal because, in the words of the court of appeals, "Henderson has a long history of larcenous conduct." *Henderson,* 2004 WL 1925395 at \*2.

Henderson argues that, under *Blakely* and *Apprendi,* a conclusion that he met the definition of a pattern of criminal conduct is a finding of fact that must be made by a jury. In *Apprendi v. New Jersey,* the United States Supreme Court held that aside from the fact of a prior conviction the jury, not the judge alone, must find any fact that exposes a defendant to punishment beyond the maximum statutory punishment for a particular crime. 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Blakely,* the Court examined Washington state's sentencing scheme, holding that the statutory maximum sentence to which upward departures may be added based on facts found by the

---

1. We recently ruled that *Blakely* does not apply retroactively to cases on collateral review.

*State v. Houston,* 702 N.W.2d 268, 273 (Minn. 2005).

jury is the presumptive sentence established by the state sentencing guidelines, rather than the absolute maximum sentence permitted by statute. 542 U.S. at 303–04, 124 S.Ct. 2531. Thus, even though the sentence imposed by the trial court in *Blakely* was within the range provided by statute, because that sentence was a substantial upward departure from the presumptive sentence established by Washington state's sentencing guidelines, the fact that the departure was based solely on the judge's own findings of aggravating facts and not solely on the jury's verdict rendered that sentence constitutionally infirm. *Id.* Under *Apprendi* and *Blakely*, any assigned punishment based on facts beyond those found by the jury's verdict or admitted by the defendant constitutes an infringement of the defendant's Sixth and Fourteenth Amendment rights.

The issue before us, then, is whether the determination of a pattern of criminal conduct presents a question of law within the district court's discretion or whether it necessarily requires fact-finding that only may be made by a jury. We previously examined the meaning of "pattern of criminal conduct" in *State v. Gorman*, 546 N.W.2d 5 (Minn.1996). In that case, the defendant was convicted of second-degree felony murder and first-degree manslaughter and was sentenced to 450 months, a double durational departure from the presumptive 225–month sentence. *Id.* at 7. The court based the departure on the career offender statute, finding that the defendant had five prior felony convictions (two for third-degree burglary, and one each for receiving stolen goods, possession of a stolen gun, and third-degree assault), and that the convictions were evidence of a pattern of criminal conduct. *Id.*

The defendant in *Gorman* appealed, arguing that his conduct did not fall within the meaning of "a pattern of criminal con-

duct." *Id.* at 8. The defendant claimed that the offense for which he was convicted, felony murder, was unrelated to his prior felony convictions, such that no pattern was established. *Id.* In responding to the defendant's argument, we first noted that "pattern" had been defined in previous case law and in other statutes. *Id.* at 8–9 (citing *United States v. Oliver*, 908 F.2d 260, 265–66 (8th Cir.1990); *State v. Robinson*, 539 N.W.2d 231, 237 (Minn. 1995); Minn.Stat. § 609.902, subd. 6(3)(i) (1994)). We concluded that this precedent revealed a common understanding of "pattern" as "the organizing principle or relationship binding certain things, in this case incidents of criminal conduct, together. Such a 'pattern of criminal conduct' may be demonstrated by proof of criminal conduct similar, but not identical, in motive, purpose, results, participants, victims or other shared characteristics." *Gorman*, 546 N.W.2d at 9. In addition, we held that a pattern of criminal conduct "may be demonstrated by reference to past felony or gross misdemeanor convictions or by proof, through clear and convincing evidence, of prior, uncharged acts of criminal conduct, where such acts are similar to the present offense in motive, purpose, results, participants, victims or other characteristics." *Id.*

The state claims that this type of determination comes under the recidivism exception to *Apprendi* and *Blakely* first recognized in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and that therefore it is a question of law. In *Almendarez–Torres*, the United States Supreme Court considered a federal statute authorizing a two-year prison term for deportees who return to the United States without permission, but authorizing a prison term of up to 20 years for aliens whose deportation was subsequent to a felony conviction. *Id.* at 226, 118 S.Ct. 1219. The question before

the Court was whether the statute defined two separate crimes, in which case the prior conviction must be mentioned in the indictment, or simply authorized an enhanced penalty, in which case the prior conviction is not an element that must be charged. *Id.* The Court determined that the prior felony conviction was merely a penalty provision that authorized courts to increase the sentence for a recidivist. *Id.* at 229–35, 118 S.Ct. 1219. The Court noted that recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Id.* at 243, 118 S.Ct. 1219. Therefore, the Court held, the fact of a prior felony conviction may be considered by the judge in enhancing a sentence, without being made an element of the offense for which the defendant is being sentenced. *Id.* at 235, 247, 118 S.Ct. 1219.

The state argues that the career offender determination in this case is akin to the determination of prior convictions in the *Almendarez–Torres* case. We do not agree.

The statute at issue in *Almendarez–Torres* allowed enhancement based purely on the existence of a previous felony conviction, without consideration of any relationship of the previous felony to the deportation violation. The career offender statute is significantly different. Under the career offender statute, not only must a judge find that the defendant has prior felony convictions, but the judge must also look to a variety of prior conduct, including felony and gross misdemeanor offenses and prior uncharged acts of criminal conduct, and decide what their relationship is to each other and to the conviction for which a sentence is being imposed. As the Minnesota Court of Appeals recently concluded in *State v. Mitchell*, determination of a pattern of criminal conduct "involves a comparison of different criminal acts, weighing the degree to which those acts are sufficiently similar * * *. This determination goes beyond a mere determination as to the fact, or number, of the offender's prior convictions * * *." 687 N.W.2d 393, 399–400 (Minn.App.), *rev. granted and stayed* (Minn. Dec. 22, 2004).[2]

The relevant rule from *Apprendi* dictates that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. The *Apprendi* Court made it clear that recidivism is a narrow exception to the general rule that all facts going to punishment must be found by a jury. Therefore, the additional findings involved in the comparison and weighing of bad conduct go beyond the acceptable parameters of the recidivism exception, because they involve more than the fact of prior convictions. We hold that the determination of a pattern of criminal conduct under Minn.Stat. § 609.1095 goes beyond solely the fact of a prior conviction and, therefore, the imposition of an enhanced sentence based on the district court's finding of a pattern of criminal conduct violated Henderson's Sixth Amendment right to trial by jury.

---

**2.** In a number of other recent cases, the court of appeals has retreated from its decision in the case before us, and has acknowledged that upward durational departures under the career offender statute violate a defendant's Sixth Amendment rights. *See, e.g., State v. Berry*, No. A04–1435, 2005 WL 1021374 at *3 (Minn.App. May 3, 2005), *rev. denied* (Minn. July 19, 2005); *State v. Midderigh*, No. A04–332, 2005 WL 1018424 at *5 (Minn.App. May 3, 2005), *rev. granted and stayed* (Minn. July 19, 2005); *State v. Rettke*, No. A04–1358, 2005 WL 1020936 at *2 (Minn.App. May 3, 2005).

### III.

We turn to consideration of the proper remedy. When this case was briefed and argued, we had pending before us the case of *State v. Shattuck*, 704 N.W.2d 131 (2005) (*Shattuck II*), in which we determined the proper remedy where an upward departure under our state sentencing guidelines was unconstitutionally imposed. We severed the unconstitutional portion of the guidelines and left the remainder of the sentencing guidelines intact. *Id.* at 146. Further, we declined to engraft onto the sentencing guidelines and sentencing statutes a requirement for sentencing juries or bifurcated trials, for to do so would require us to rewrite those guidelines and statutes. *Id.* at 148. Our decision in *Shattuck II* controls the remedy in this case and, therefore, we reverse the decision of the court of appeals and remand to the district court for resentencing consistent with *Shattuck II.*

Reversed and remanded for resentencing.

ANDERSON, G. BARRY, J., took no part in the consideration or decision of this case.