STATE of Minnesota, Appellant,

v.

Sara Ruth PECK, Respondent.

No. A08–0579.

Court of Appeals of Minnesota.

Oct. 7, 2008.

Lori Swanson, Attorney General, St. Paul, MN; and G. Paul Beaumaster, Rice County Attorney, Benjamin Bejar, Assistant County Attorney, Faribault, MN, for appellant.

Bradford S. Delapena, Special Assistant Public Defender, St. Paul, MN, for respondent.

Considered and decided by Lansing, Presiding Judge; MINGE, Judge; and MUEHLBERG, Judge.*

## OPINION

LANSING, Judge.

Sara Peck was charged with first-degree controlled-substance crime based on the possession of 37.17 grams of "bong water" containing methamphetamine. In this pretrial appeal, the state challenges the district court's dismissal of the charge for lack of probable cause. Because the water contained in the post-use by-product of a methamphetamine bong is not a mixture under Minn.Stat. § 152.01, subd. 9a (2006), we conclude that the state cannot show that Peck possessed 25 grams or more of a mixture containing methamphetamine, and we affirm.

## FACTS

While searching Sara Peck's home, police officers discovered a glass bong and a small bag containing methamphetamine. A bong is a "water pipe that consists of a bottle or a vertical tube partially filled with liquid and a smaller tube ending in a bowl, used often in smoking narcotic substances." *The American Heritage Dictionary* 209 (4th ed. 2000). Inside the bong, officers found a pink liquid, with a "fruity odor," that tested positive for methamphetamine. The liquid weighed 37.17 grams and had a volume of 36 milliliters.

Based on possession of the bong water, Peck was charged with first-degree controlled-substance crime for possession of methamphetamine under Minn.Stat. § 152.021, subd. 2(1) (2006). In addition to the first-degree charge, Peck was also charged with fifth-degree controlled-substance crime for possession of the small

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

bag of methamphetamine and with child endangerment because her two minor children were present in the home.

First-degree controlled substance crime requires proof of possession of 25 grams or more of methamphetamine. *Id.* For first-time offenders, the presumptive sentence for first-degree controlled-substance crime is eighty-six months, with no mandatory minimum. Minn. Sent. Guidelines IV; Minn.Stat. § 152.021, subd. 3(a) (2006). For repeat drug offenders, the mandatory minimum sentence for first-degree controlled-substance crime is forty-eight months in prison. Minn.Stat. § 152.021, subd. 3(b) (2006).

Peck moved to dismiss the first-degree controlled-substance-crime charge for lack of probable cause. She argued that the weight of the water in the bong could not be used to establish the requisite weight proscribed by the statute. In response, a police officer testified—at a contested omnibus hearing—that drug users who are indigent or who do not have a readily available source for drugs retain the water from a methamphetamine bong for future consumption either orally or by injection. The officer testified that he knew of drug users who had consumed bong water containing methamphetamine.

The district court concluded that, because the water was part of the bong, it was therefore drug paraphernalia and the weight of the water could not be used to charge Peck with first-degree controlled-substance crime. Accordingly, the district court granted Peck's motion to dismiss the first-degree charge. The state then brought this pretrial appeal.

## ISSUE

After methamphetamine is smoked in a water pipe, is the water contained in the by-product a mixture under Minn.Stat. § 152.01, subd. 9a (2006)?

## ANALYSIS

■ On pretrial appeal, the state must clearly and unequivocally show that the district court's ruling will have a "critical impact" on the state's ability to prosecute and that the ruling was erroneous. *State v. Barrett,* 694 N.W.2d 783, 787 (Minn.2005). Because the district court entirely dismissed one of the three charges, the ruling will have a critical impact on the state's ability to prosecute. *State v. Myers,* 711 N.W.2d 113, 115 (Minn.App.2006), *aff'd sub nom. State v. Melde,* 725 N.W.2d 99 (Minn.2006). With critical impact established, we turn our analysis to the statutes that prohibit possession of methamphetamine.

■ Minnesota controlled-substance statutes establish five tiers of offenses for the sale or possession of illegal drugs. Minn.Stat. §§ 152.021–.025 (2006). Under this framework, the tiers are essentially classified based on mixture weight. *See id.* (classifying offenses). Thus, a person who possesses a mixture of methamphetamine weighing 25 grams or more is guilty of first-degree controlled-substance crime, a person who possesses a mixture weighing 3 grams or more is guilty of third-degree controlled-substance crime, and a person who possesses a mixture weighing less than 3 grams is guilty of fifth-degree controlled substance crime. Minn.Stat. §§ 152.021, subd. 2(1), .023, subd. 2(1), .025, subd. 2(1) (2006).

This mixture-weight classification system has two significant effects. First, similar to the federal drug laws, Minnesota's statutory framework uses a "market-oriented" approach that regulates drugs as they are actually sold on the street. *See Chapman v. United States,* 500 U.S. 453, 461, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991) (discussing policy of federal drug laws); *cf. State v. Lewis,* 394 N.W.2d 212, 217 (Minn.App.1986) (finding legislative in-

tent to "regulate the physical movement and transfer of controlled substances between different persons"), *review denied* (Minn. Dec. 12, 1986). Second, because the statutory framework regulates the weight of the mixture and not the weight of the pure controlled substance, the state does not need to conduct costly and potentially imprecise testing of the mixture's purity.

Minnesota courts have generally upheld the constitutionality of this mixture-weight classification system. In *State v. Clausen,* the supreme court held that the regulation of drug possession—without proof of intent to sell—does not deny defendants due process by creating an irrebuttable presumption of intent to sell. 493 N.W.2d 113, 118 (Minn.1992). But we have recognized that some applications of the statutory framework may be unconstitutional. In *State v. Russell,* the supreme court held that—under the equal-protection principles of the Minnesota Constitution—the possession of 3 grams of crack cocaine cannot be punished as severely as the possession of 10 grams of powder cocaine. 477 N.W.2d 886, 891 (Minn.1991). Peck's challenge is not, however, a constitutional challenge, but a challenge to the language of the statute as applied to the facts supporting the charge against her.

 The weight of the mixture containing a controlled substance is an element of the crime that must be proved beyond a reasonable doubt. *State v. Robinson,* 517 N.W.2d 336, 339 (Minn.1994). In *Robinson,* the supreme court considered the proof required when police seize multiple packets of drugs. *Id.* at 339–40. The court held that police could not use random sampling of the packets to establish that each packet contained cocaine. Instead, the police are required to test each packet and establish that each packet contains a mixture of cocaine. The court rea-

soned that because of the serious penalties for drug crimes, "it seems not too much to require scientific testing to establish the requisite weight." *Id.* at 340. But there are limits to the testing rule in *Robinson.* The court in *Robinson* recognized that there may be cases "where the individual items are so alike and the risk of benign substitutes so unlikely that random testing may legitimately permit an inference beyond a reasonable doubt that the requisite weight of the whole mixture is established." *Id.* The issue presented by this appeal extends beyond the precision required to establish the requisite weight for a mixture and focuses on the meaning of the term "mixture" itself.

 "Mixture," as used in the controlled-substance statutes, is defined as "a preparation, compound, mixture, or substance containing a controlled substance, regardless of purity." Minn.Stat. § 152.01, subd. 9a (2006). To determine statutory meaning, we first look carefully at the statute's text. *State v. Gorman,* 546 N.W.2d 5, 8 (Minn.1996). When a statute is free from ambiguity, we must apply its plain meaning. Minn.Stat. § 645.16 (2006) (setting forth plain-meaning rule). Only if the statutory text is ambiguous—that is, reasonably susceptible of more than one interpretation—should the court look outside the statutory text to ascertain meaning. *Gorman,* 546 N.W.2d at 8; *State v. Johnson,* 743 N.W.2d 622, 626 (Minn.App. 2008). An additional exception to the plain-meaning rule is that Minnesota courts will not give effect to plain meaning if it produces an absurd or unreasonable result that is contradictory to the legislation as a whole. Minn.Stat. § 645.17(1)-(2) (2006); *Wegener v. Comm'r of Revenue,* 505 N.W.2d 612, 617 (Minn.1993).

For purposes of the controlled-substance statute, the legislature has defined the term "mixture" by using three other words

along with the word "mixture" itself. Minn.Stat. § 152.01, subd. 9a. The dictionary definitions of these terms—preparation, compound, mixture, and substance—guide our analysis. *See State v. Hartmann*, 700 N.W.2d 449, 453–54 (Minn. 2005) (applying dictionary definitions).

██ A preparation is a "substance, such as a medicine, prepared for a particular purpose." *The American Heritage Dictionary* 1386 (4th ed. 2000). A compound is a "combination of two or more elements or parts." *Id.* at 379. A mixture is "something produced by mixing" *Id.* at 1128. A substance is a "material of a particular kind or constitution." *Id* at 1726.

Water left over in a bong can have some of the drug in it because traces are left behind as smoke passes through the water. Bong water, then, is essentially an infusion, like tea. The four terms used to define mixture under the statute could be understood to include infusions, because taken together the terms arguably cover a broad range. On the other hand, a reasonable argument can be made that the terms do not include an infusion such as bong water, because none of them necessarily implies a water-based combination. Without more, either understanding is reasonable, and, consequently, we conclude that the statutory definition is ambiguous as applied to bong water.

We also note, as did the district court, that the broad definition of "drug paraphernalia" in the controlled-substance statute—which includes "materials of any kind" used in injecting or ingesting controlled substances—tends to create ambiguity. Minn.Stat. § 152.01, subd. 18(a) (2006). The water used in a bong could be "material of any kind," which raises the question of whether bong water could be both paraphernalia and a mixture. *See Johnson*, 743 N.W.2d at 626 (holding statute should be interpreted whenever possible to give effect to all of its provisions).

██ Three canons of construction are of assistance in resolving this ambiguity. First, when the intent of the legislature is not clear, the meaning of doubtful words in a legislative act may be determined by reference to their association with other words and phrases. *State v. Suess*, 236 Minn. 174, 52 N.W.2d 409 (1952). One particular textual canon, referred to as "noscitur a sociis," provides that when two or more words are grouped together and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited or qualified by the special word. *Id.*; *State v. Taylor*, 594 N.W.2d 533, 536 (Minn.App. 1999).

██ The term "mixture" is defined in terms of preparations and compounds, as well as mixtures and substances. A "preparation" is a combination created for a particular purpose, and "compound" is a chemical term that also suggests a nonaccidental and nonincidental combination. Under the doctrine of noscitur a sociis, "mixture" should be construed in the same sense of deliberate, nonaccidental and nonincidental combinations. By using these more specific terms—which denote formulation for a particular purpose—the legislature limited the broader terms in the definition of "mixture." *See State v. Moore*, 699 N.W.2d 733, 738–39 (Minn. 2005) (concluding that specific terms in statute restricted meaning of general term). Thus, we conclude that "mixture" under the controlled-substance statutes means something that has been prepared for a particular purpose—which in this context would be the use, sale, or manufacture of controlled substances.

This conclusion is fully consistent with federal cases interpreting federal drug

laws under the "market-oriented" approach. *See Chapman,* 500 U.S. at 461, 111 S.Ct. at 1925 (applying "market-oriented" approach to hold that weight of blotter paper should be considered part of LSD "mixture or substance"). The idea is that drug enforcement logically reaches not only pure narcotics, but the use of a medium that makes a drug more marketable. Although the state's expert testified that bong water may be useable, we have no reason to believe that it is marketable in any meaningful sense, and nothing in the record indicates that the bong water in Peck's basement—or any other bong water—has been marketed.

As in *Taylor,* this interpretation also comports with a second canon of construction which says that, if possible, all words in a statute should be given meaning. *Cf. Taylor,* 594 N.W.2d at 536 (concluding that construction of "case" as referring to any container would render specialized term "gunbox" superfluous). If "mixture" encompassed the broad construction the state suggests, then the narrower, more technical terms "preparation" and "compound" would lose any limiting effect on the statutory definition and would become superfluous.

The same result is achieved by applying a canon of construction specific to criminal statutes, namely, the requirement that a penal statute must be strictly construed, resolving any reasonable doubt as to legislative intent in favor of the defendant. *State v. Colvin,* 645 N.W.2d 449, 452 (Minn.2002).

Lastly, statutory construction generally is guided by a presumption "that the legislature does not intend a result that is absurd ... or unreasonable" or that is contradictory to the legislation as a whole. Minn.Stat. § 645.17(1)-(2) (2006). If we were to adopt the state's suggested interpretation of "mixture," a person might absurdly be prosecuted for possessing over 25 grams of a controlled substance if the person accidentally spilled .01 grams of a controlled substance in his or her swimming pool and the presence of the drug was discernible by testing. *See* David A. Strauss, *The Anti–Formalist,* 74 U. Chi. L.Rev. 1885, 1893 (2007) (posing similar swimming-pool hypothetical).

The state contends that this supposed absurdity does not exist because in the swimming-pool hypothetical the state would be unable to prove that the person possessed the controlled substance. *See, e.g.,* Minn.Stat. § 152.021, subd. 2(1) (requiring proof of possession). We are not persuaded. Although Minnesota law imposes a scienter requirement on possession as defined in the controlled-substance statutes, the requirement is based on knowledge, not intent. *See State v. Florine,* 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975) (holding that defendant must consciously possess substance and have actual knowledge of nature of substance). Consequently, because a person could knowingly possess a swimming pool with a drop of methamphetamine, the possession requirement does not provide the safeguard that the state suggests. Our conclusion, that "mixture" must be interpreted as implying the purpose of marketing a drug, is consistent with the scienter requirement and logically imposes a similar limitation.

Thus, we hold that the post-use byproduct of a methamphetamine bong is not a "mixture" as defined in Minn.Stat. § 152.01, subd. 9a. Accordingly, the total weight of the mixture could not be used to charge Peck with first-degree controlled-substance crime, and the state must base its charge on the weight of the methamphetamine found in the water.

Although our holding may require the state to conduct some additional testing, the burden is minimal. When, as in this case, the post-use by-product is created

using a water bong, it should be relatively easy for the state to determine with reasonable accuracy the amount of methamphetamine in the water. To the extent that the need for more precise testing does create an additional burden, this burden is justified by the seriousness of the charges. *See Robinson,* 517 N.W.2d at 340 (requiring precise testing due to seriousness of charge).

Finally, we note that the circumstances in which this holding applies are likely quite limited. Although the text of Minn. Stat. § 152.01 requires that a mixture exists only when something has been prepared for the purpose of drug use, sale, or manufacturing, that standard is easily met in ordinary drug cases. It is only in rare cases—such as when a substance is created accidentally or results as a by-product of drug use—that this holding will have any application. And, in the unlikely event that dealers in methamphetamine might begin to intentionally use water as a medium for its distribution, our interpretation of the meaning of "mixture" and the co-requisite scienter requirement would likely be met, and the weight of the water could be used to determine the charge and the penalty.

## DECISION

Because the post-use by-product of a methamphetamine bong is not a mixture under Minn.Stat. § 152.01, subd. 9a (2006), the evidence cannot establish that Peck possessed 25 grams or more of a mixture containing methamphetamine. We, therefore, affirm the district court's order dismissing the first-degree controlled-substance-crime charge for lack of probable cause.

**Affirmed.**