*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0037**

State of Minnesota,
Respondent,

vs.

Kristopher Lee Roybal,
Appellant.

**Filed July 21, 2014
Affirmed
Rodenberg, Judge**

Ramsey County District Court
File No. 62-CR-12-2471

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Drake D. Metzger, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Chutich, Judge.

# U N P U B L I S H E D   O P I N I O N

**RODENBERG**, Judge

Appellant Kristopher Lee Roybal challenges his conviction of first-degree driving while impaired (DWI) after a stipulated-evidence trial and after his petition for

postconviction relief was summarily denied by the district court while his direct appeal was stayed. We affirm.

## FACTS

In the early morning hours of March 27, 2012, Minnesota State Patrol Trooper Peter Schultz was on patrol traveling eastbound on Interstate 94. He witnessed appellant's vehicle swerve and cross two solid white lines at the apex of the exit on Marion Street. When the squad car's overhead lights were activated, an automated and dash-mounted camera started recording.

Appellant promptly pulled over, and Trooper Schultz approached the driver's-side window. He identified appellant as the driver. He noticed that appellant's eyes were watery and bloodshot and that appellant had trouble locating his proof of insurance when asked for it. Trooper Schultz then had appellant get out of his vehicle to perform several field sobriety tests (which indicated impairment) and a preliminary breath test (which showed an alcohol concentration of .149). Appellant was placed under arrest at approximately 2:45 a.m., but was not initially read his *Miranda* rights.

Trooper Schultz transported appellant to the Ramsey County Law Enforcement Center (LEC) in his squad car. The squad-car recording reveals that the following conversation took place:

> SCHULTZ: You okay with doing a urine test? You ever done one of those before? That's alright with you?
>
> [Pause]
>
> APPELLANT: Do you think I'm on other drugs or something?

2

SCHULTZ: It's either going to be urine or blood and I'm assuming you don't want to get stabbed by a needle.

[Pause]

APPELLANT: What made you want to do a Breathalyzer on me?
SCHULTZ: I stopped you because you . . . I stopped you because when you took that ramp you cut across the median.
APPELLANT: Oh.

[Pause]

APPELLANT: You know why I cut across that median?
SCHULTZ: Why's that?
APPELLANT: Because my passenger told me, 'hey you need to get off this ramp.'
SCHULTZ: Giving you bad directions?
APPELLANT: Yeah.

After arriving at the Ramsey County LEC, appellant was read the implied consent advisory at 3:12 a.m. He was informed of his right to consult with counsel, but chose not to contact an attorney. Appellant agreed to give a urine sample at 3:21 a.m., which, when tested, showed an alcohol concentration of .15. Trooper Schultz did not attempt to obtain a warrant for the urine sample. Appellant was read his *Miranda* rights at 3:44 a.m. and declined to continue speaking with Trooper Schultz.

Appellant was charged with two counts of first-degree DWI in violation of Minn. Stat. § 169A.20, subd. 1(1), (5) (2010). He moved to suppress evidence on several grounds, including Trooper Schultz's lack of a reasonable, articulable suspicion to stop appellant and his failure to read appellant his *Miranda* rights before administering field sobriety tests. Appellant did not challenge admission of the statement he made in the

3

squad car or the legality of his consent to provide a urine sample once at the Ramsey County LEC.

Trooper Schultz testified at the omnibus hearing.  He refreshed his memory with a DWI report he wrote shortly after the arrest.  Trooper Schultz testified that he "noticed a vehicle a couple cars in front of [him] cut across several lanes of traffic to make an exit ramp to go to Marion Street."  The vehicle was in the center lane and cut across the solid white lines separating the ramp from the highway at the apex of the Marion Street exit. He testified that the vehicle was in the center lane when it swerved to exit on Marion, but his DWI report indicated that the vehicle was in the right lane.  Trooper Schultz explained that his DWI report indicated that the vehicle was in the right lane, as opposed to the center lane, because the stretch of freeway in question had four lanes, and appellant's vehicle was in "one of the right lanes."  He agreed that if a car was in the far-right lane, it would "get right off on Marion."

Appellant's vehicle is black.  Trooper Schultz initially testified that appellant's vehicle was white, but later testified that it was black.  The DWI report stated that the vehicle was white, and Trooper Schultz explained that his report relied on public records that incorrectly listed the vehicle as white.  Despite this discrepancy, Trooper Schultz testified that the car he pulled over "was the same car" that he witnessed cross the two solid white lines at the apex of the Marion Street exit.

On cross-examination, appellant's attorney questioned Trooper Schultz as to why the squad-car recording did not capture the alleged traffic violation, and why Trooper Schultz never attempted to obtain Minnesota Department of Transportation (MnDOT)

footage of the incident. Trooper Schultz explained that the squad-car camera did not record appellant's traffic violation because it does not begin to record until it is manually activated or the squad car's overhead lights are activated. He also testified that he did not attempt to obtain MnDOT footage because he did not think the recordings would have captured the incident, and they are erased after only three or four days.

Appellant testified that there are five lanes (rather than four) where the alleged traffic violation occurred, and that he had been traveling in the far-right lane. Appellant testified that he followed the instructions of his passenger and moved into the right lane after Dale Street so as not to miss the Marion Street exit, and that, because he was in the right lane, he did not cut across any lanes or white lines to make the exit. Appellant was impeached with evidence of three prior, non-DWI criminal convictions.

The district court denied appellant's motion to suppress, finding as facts that "[appellant] missed the beginning of the exit ramp, and swerved quickly crossing two solid white lines" to make the exit. It concluded that "Trooper Schultz did not intentionally or unlawfully withhold video evidence of [appellant's traffic violation]." The district court also noted that "during the transfer to the Ramsey County LEC, [appellant] acknowledge[d] the driving conduct that led to the traffic stop." Appellant stipulated to the state's evidence pursuant to Minn. R. Crim. P. 26.01, subd. 4 to preserve the pretrial issues for appeal, and the district court found appellant guilty of first-degree DWI in violation of Minn. Stat. § 169A.20, subd. 1(5). Because appellant had three prior DWI convictions, he was sentenced to fifty months in prison pursuant to Minn. Stat. § 169A.24, subds. 1(1), 2 (2010).

5

Appellant timely appealed his conviction. We stayed his direct appeal to allow appellant to pursue postconviction relief in the district court. His postconviction petition argued that, pursuant to *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), decided after the denial of appellant's suppression motion, appellant's urine sample was obtained in violation of his Fourth Amendment rights and that evidence of the test results should therefore have been suppressed. He also argued that the Minnesota Implied Consent Law places an unconstitutional condition on the privilege to drive in this state. The district court summarily denied the petition without a hearing because appellant had not raised the issues pretrial. Appellant also appealed from the denial of his postconviction petition. We consolidated his direct appeal and his appeal of the denial of postconviction relief.

## D E C I S I O N

## I.

Appellant argues in his direct appeal that the district court erred in concluding that Trooper Schultz had a reasonable, articulable basis for stopping appellant as he exited the freeway. The United States and Minnesota Constitutions guarantee the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. We examine the reasonableness of a traffic stop under the principles set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). *State v. Askerooth*, 681 N.W.2d 353, 363 (Minn. 2004). We must determine "whether the stop was justified at its inception" and whether the police action "during the stop [was] reasonably related to and justified by the circumstances that gave rise to the stop." *Id.* at 364.

6

An officer may conduct a limited investigatory traffic stop if he has a particularized and objective basis for suspecting criminal activity. *State v. Anderson*, 683 N.W.2d 818, 822-23 (Minn. 2004). An officer who observes a traffic violation has an objective basis for stopping a vehicle. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997).

When reviewing a pretrial order on a motion to suppress evidence, we review factual findings for clear error and legal determinations de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). Reversal for clear error occurs only when we are "left with the definite and firm conviction that a mistake has been made." *State v. Gomez*, 721 N.W.2d 871, 883 (Minn. 2006) (quotation omitted). We defer to the district court's credibility determinations. *State v. Miller*, 659 N.W.2d 275, 279 (Minn. App. 2003), *review denied* (Minn. July 15, 2003).

Appellant points to the inconsistencies between Trooper Schultz's DWI report and his testimony at the omnibus hearing concerning which lane appellant's car was traveling in before it swerved and the color of appellant's vehicle. He argues that these inconsistencies render Trooper Schultz's testimony not credible. He also argues that, because the district court's factual finding regarding appellant's alleged traffic violation is clearly erroneous, the record does not support the district court's factual findings. Therefore, he argues, the traffic stop was unconstitutional because it was not based on a reasonable, articulable suspicion of criminal activity.

Based on Trooper Schultz's testimony, the district court found that appellant had committed a traffic violation by swerving and crossing two solid white lines at the apex

7

of the Marion Street exit. The district court implicitly found Trooper Schultz's testimony credible, and we defer to the district court's factual findings if the record supports the findings. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (noting that a district court's findings regarding credibility may be implicit); *Gauster*, 752 N.W.2d at 502 (noting that we review factual findings for clear error); *Miller*, 659 N.W.2d at 279 (noting that we defer to credibility determinations). Because it has record support, the district court's factual finding regarding the traffic violation is not clearly erroneous. *See Gomez*, 721 N.W.2d at 883 (noting that we must be "left with the definite and firm conviction that a mistake has been made" to find clear error). The district court did not err in concluding that Trooper Schultz had an objectively reasonable basis to stop appellant's vehicle.

**II.**

Appellant also argues that evidence of his squad-car admission of the alleged traffic violation should be suppressed because he was not first read his *Miranda* rights. "[A] *Miranda* warning is required as a procedural safeguard to protect a suspect's Fifth Amendment rights when the police subject a suspect to custodial interrogation." *State v. Vue*, 797 N.W.2d 5, 10 (Minn. 2011) (emphasis omitted); *see also* U.S. Const. amend. V (providing that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself"); Minn. Const. art. I, § 7 (same). "A *Miranda* warning is required if a suspect is both in custody and subject to interrogation." *State v. Scruggs*, 822 N.W.2d 631, 637 (Minn. 2012).

8

The district court found that "during the transfer to the Ramsey County LEC, [appellant] acknowledge[d] the driving conduct that led to the traffic stop." Appellant indicates that his admission was made while in custody, after his arrest, and before *Miranda* warnings were given. He argues that "Trooper Schultz should have known that talking about the alleged reason for stopping [appellant] would elicit a potentially incriminating response from [him]," and that the admission was therefore the product of interrogation and must be suppressed. The state argues that appellant is not entitled to relief on this issue because (1) appellant did not raise the issue pretrial and it is therefore barred, and (2) the admission was spontaneous and not made in response to interrogation.

We initially consider whether this issue was preserved for our review. At the omnibus hearing, appellant argued that, because he should have been given *Miranda* warnings before Trooper Schultz administered any field sobriety tests, evidence of those test results should have been suppressed. On appeal, he makes a different argument: that his squad-car admission should have been suppressed. The state argues that this issue was waived because appellant did not raise it in the district court. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (noting that issues not raised in the district court are generally waived on appeal). However, we may address an issue not raised in the district court if we determine that it is required in the interests of justice and it would work no unfair surprise on the opposing party. *Id.*; *see also* Minn. R. Crim. P. 28.02, subd. 11. We conclude that our consideration of this issue is required in the interests of justice. If appellant were to have been interrogated while in custody and without being first advised of his *Miranda* rights, the interests of justice would warrant appellate relief, and the state

9

is not unfairly surprised because all of the relevant evidence regarding the issue is contained in an electronic video recording in the record. *See Roby*, 547 N.W.2d at 357.

Because appellant was in custody while in the back of the squad car, any statements made by him in response to interrogation before he was advised of his *Miranda* rights should be suppressed. *See Scruggs*, 822 N.W.2d at 637. But not all statements made by an arrestee while in custody are the product of interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 299-301, 100 S. Ct. 1682, 1689-90 (1980). *Miranda* warnings protect an arrestee from "express questioning or its functional equivalent." *Id.* at 300-01, 100 S. Ct. at 1689. Interrogation includes "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S. Ct. at 1689-90. "[S]pontaneous, volunteered statement[s] not made in response to interrogation" will not be suppressed as a result of an arrestee not being given *Miranda* warnings. *State v. Hale*, 453 N.W.2d 704, 707 (Minn. 1990). "We independently apply the totality-of-the-circumstances test to the facts as found by the [district] court on the issue of the voluntariness of a defendant's statements." *State v. Jackson*, 351 N.W.2d 352, 355 (Minn. 1984).

The state argues that, "[w]hile appellant may have been in custody in the squad car, Trooper Schultz did not interrogate him." It contends that, in response to Trooper Schultz's telling appellant why he was pulled over, appellant could have stopped at saying "Oh." Instead, after a short pause, appellant volunteered the explanation for why he had committed a traffic violation:

10

APPELLANT: What made you want to do a Breathalyzer on me?

SCHULTZ: I stopped you because you . . . I stopped you because when you took that ramp you cut across the median.

APPELLANT: Oh.

[Pause]

APPELLANT: You know why I cut across that median?

SCHULTZ: Why's that?

APPELLANT: Because my passenger told me, 'hey you need to get off this ramp.'

SCHULTZ: Giving you bad directions?

APPELLANT: Yeah.

We first observe that the interaction in the squad car was conversational. Trooper Schultz asked appellant about whether he would prefer a urine test or a blood test.[1] After that question, Trooper Schultz made no other inquiry of appellant, except as initiated by appellant's statements. Our review of the record convinces us that appellant's admission of having "cut across that median" was not made in response to interrogation. Appellant initiated the conversation when he asked Trooper Schultz why he wanted appellant to do a breath test, which Trooper Schultz seems to have interpreted as appellant asking why he had stopped appellant's vehicle. The electronic squad-car recording reveals that appellant responds "Oh" and, after a lengthy pause, he offers an explanation for his driving. The explanation was not in response to any direct questioning by Trooper Schultz.

_____

[1] Arguably this line of conversation should not have been started by Trooper Schultz until appellant had been advised of his implied-consent rights. But as discussed below, appellant was read his implied-consent rights at the Ramsey County LEC and before he selected a urine test from the menu of options given him.

The state also compares this case to *Jackson*, wherein a jail deputy responded to an inmate's comment about the death penalty by telling the inmate "[y]ou are the only one who knows you did it." *See id.* at 354. The inmate then responded by admitting his guilt, and our supreme court held that this admission was not the product of interrogation. *Id.* at 354-55. In so holding, the supreme court noted that the inmate had initiated the conversation and that his comment had invited a response from the deputy. *Id.* at 355. Therefore, the deputy was not required to interrupt the inmate's spontaneous statement in order to give *Miranda* warnings. *Id.* at 356.

Like in *Jackson*, appellant initiated the conversation at issue and then offered an explanation for his driving behavior. *See id.* at 354-55. The admission was not made in response to direct police questioning. Based on the totality of the circumstances, and after watching and listening to the squad-car conversation, we conclude that appellant's admission was not made in response to interrogation, and therefore the statement need not be suppressed.

### III.

"When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, we review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012). A summary denial of a postconviction petition without an evidentiary hearing is reviewed for an abuse of discretion. *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013).

12

The United States and Minnesota Constitutions guarantee the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. The taking of a blood, breath, or urine sample is a physical intrusion that constitutes a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). A search is generally unreasonable unless it is conducted pursuant to a warrant issued upon probable cause. *Id.* at 619, 109 S. Ct. at 1414. But there are established exceptions to the warrant requirement. One such exception is consent to the search. *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992).

Appellant argues that his consent to provide a urine sample while at the Ramsey County LEC was unconstitutionally coerced. We first consider whether this issue was preserved for appeal. The district court held that appellant's postconviction arguments were procedurally barred because appellant did not raise the consent issue pretrial. Appellant cites *Griffith v. Kentucky*, 479 U.S. 314, 327-28, 107 S. Ct. 708, 715-16 (1987), for the proposition that *McNeely* and *Brooks* must be retroactively applied to his case. The state argues that *Griffith* applies only to issues that were first raised in the district court and to which a defendant seeks to apply a new rule that is announced while his case was pending. Additionally, the state points out that appellant could have raised the consent issue pretrial even though *Brooks* had not yet been decided (as this is what the defendant in *Brooks* did). *See* 838 N.W.2d at 566.

In summarily denying appellant's postconviction petition, the district court reasoned that appellant's failure to raise the consent issue pretrial barred the claims. But the district court relied on three cases that stand only for the proposition that an *appellate*

13

court will not consider issues that are not first raised in the district court. *See State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011); *State v. Henderson*, 706 N.W.2d 758, 759 (Minn. 2005); *State v. Schleicher*, 672 N.W.2d 550, 555 (Minn. 2003). Postconviction relief is barred procedurally if, *after a direct appeal*, the issue raised in the postconviction petition could have been raised in the direct appeal. Minn. Stat. § 590.01, subd. 1. Appellant filed his postconviction petition while his direct appeal was stayed. The district court, therefore, erred in summarily denying appellant's petition. *See Nicks*, 831 N.W.2d at 503.

For the consent exception to the warrant requirement to apply, the state must show by a preponderance of the evidence that a defendant "freely and voluntarily" consented. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). Whether an individual voluntarily consented is a factual question normally reviewed for clear error. *Id.* In a case with factual disputes on the issue of consent, we would remand the case for an evidentiary hearing on that issue. But here, the parties are making purely legal arguments based on undisputed facts. We therefore address the consent issue on the undisputed record. *See Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007) (noting that a postconviction court's legal determinations are reviewed de novo); *see also Brooks*, 838 N.W.2d at 568-72 (discussing the consent exception in the context of DWI enforcement).

In *Brooks*, the defendant was arrested for DWI on three separate occasions and on each occasion was read the implied consent advisory, spoke with an attorney by telephone, and agreed to submit to testing. 838 N.W.2d at 565-66. Our supreme court held that voluntariness of consent must be determined by examining "the totality of the

14

circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quotation omitted). Moreover, the language of the implied consent advisory makes clear that a person has a choice of whether to submit to testing, and "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* at 572.

The *Brooks* court concluded that nothing in the record suggested that the defendant "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* at 571 (quotation marks omitted). In so holding, the supreme court set forth some circumstances that may suggest coercion, such as when a suspect is "confronted with repeated police questioning" or "asked to consent after having spent days in custody." *Id.*

Appellant relies on evidence contained in the squad-car recording to argue that Trooper Schultz coerced appellant into consenting to a urine test by stating that "it's either going to be urine or blood and I'm assuming you don't want to get stabbed by a needle." Appellant argues that, because Trooper Schultz did not tell appellant while in the squad car that he had a right to refuse the test, the purpose of the implied consent advisory was undermined. The state argues that we must instead look to the totality of the circumstances to determine whether appellant freely consented to provide a urine sample.

Here, appellant was read the implied consent advisory, indicated that he understood the advisory and did not wish to consult with an attorney, and agreed to

15

provide a urine sample within an hour of arriving at the Ramsey County LEC. Our review of the squad-car video convinces us that the conversation in the squad car was not overbearing or coercive. In fact, appellant appears to have ignored Trooper Schultz's question about whether he preferred a urine or blood test. Instead, appellant asked why Trooper Schultz had chosen earlier to give him a breath test. Additionally, appellant was later read the implied consent advisory, ameliorating any alleged coercion in the squad car. We also note that appellant has three prior DWI convictions, and the implied-consent procedure was familiar to him. We conclude that the totality of the circumstances indicates that appellant voluntarily consented to providing a urine sample. Nothing in the record indicates that his consent "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *See id.* at 571.

Appellant also argues that Minnesota's implied-consent law is unconstitutional because it conditions the privilege to drive on the relinquishment of a constitutional right, namely, the right to be free from unreasonable searches and seizures. We note that this issue was not adequately briefed. *See Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (declining to address constitutional arguments due to inadequate briefing). But this argument also fails on its merits. *Brooks* held that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." 838 N.W.2d at 570. And a recent decision of this court rejects the unconstitutional-conditions argument in the implied-consent context. *See Stevens v. Comm'r of Pub. Safety*, ___ N.W.2d ___, ___, 2014 WL 3396522, at *5-

16

11 (Minn. App. July 14, 2014) (setting forth four reasons why the Minnesota Implied Consent Law does not violate the doctrine of unconstitutional conditions). Here, appellant did not refuse to submit to testing. He was not charged with test refusal. Appellant's unconstitutional-conditions argument fails.

**Affirmed.**