STATE OF MINNESOTA

IN SUPREME COURT

A13-1586

Court of Appeals                                                          Stras, J.

State of Minnesota,

                    Respondent,

vs.                                                              Filed: April 22, 2015
                                                         Office of Appellate Courts

Ge Her,

                    Appellant.

_____

Lori Swanson, Attorney General, James B. Early, Karen B. Andrews, Assistant Attorneys General, Saint Paul, Minnesota; and

Steven Collins, Redwood County Attorney, Redwood Falls, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate State Public Defender, Steven P. Russett, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

S Y L L A B U S

1.      Whether the defendant was a risk-level-III offender, as determined by a committee of the Department of Corrections, is a fact that must be admitted by the defendant or found by a jury beyond a reasonable doubt before a court may impose a 10-year term of conditional release under Minn. Stat. § 243.166, subd. 5a (2014).

1

2.    A defendant's assigned risk level under Minn. Stat. § 244.052, subd. 3(e) (2014), is not a fact that fits within the prior-conviction exception to the Sixth Amendment's jury-trial right.

Reversed and remanded.

O P I N I O N

STRAS, Justice.

Appellant Ge Her challenges the district court's imposition of a 10-year period of conditional release for his conviction of failing to register as a predatory offender. *See* Minn. Stat. § 243.166, subd. 5a (2014). The district court imposed the conditional-release term based on a previous finding by an administrative committee of the Department of Corrections that had assessed Her as a high-risk, level-III offender based on a variety of qualitative factors designed to assess "public risk." Minn. Stat. § 244.052, subd. 3 (2014). Several years later, Her filed a motion to correct his sentence, arguing that the Sixth Amendment to the United States Constitution required a jury, not the judge, to make the finding regarding his risk-level status. The district court denied Her's motion, and the court of appeals affirmed. Because we conclude that Her had the right to have a jury determine whether he was a risk-level-III offender at the time of his offense, we reverse the decision of the court of appeals.

I.

Her was required to register as a predatory offender after he was adjudicated delinquent in 1998 of third-degree criminal sexual conduct, conspiracy to commit criminal sexual conduct, and committing a crime for the benefit of a gang. *See* Minn.

2

Stat § 243.166, subd. 1b (2014). Prior to Her's release from prison in 2003, a Department of Corrections End-of-Confinement Review Committee ("ECRC") determined that he was a risk-level-III offender. Her has never challenged the ECRC's determination. *See* Minn. Stat. § 244.052, subd. 6 (2014) (providing a right to seek administrative review of an ECRC risk-level determination). In 2008, after Her failed to notify law enforcement that he had moved to a new residence, the State charged him with failing to register as a predatory offender. Following a trial in which the jury found Her guilty, the district court imposed a presumptive sentence of 16 months in prison and, based on Her's risk-level-III status, imposed a 10-year conditional-release term under Minn. Stat. § 243.166, subd. 5a.[1]

Approximately 5 years later, Her filed a motion under Minn. R. Crim. P. 27.03, subd. 9, to correct his sentence,[2] arguing that the court's imposition of a conditional-release period violated his rights under the Sixth Amendment to the United States Constitution because his risk-level status was never proved to a jury beyond a reasonable doubt. *See, e.g.*, *Blakely v. Washington*, 542 U.S. 296, 301-303 (2004) (holding that, other than a prior conviction, any fact that increases the penalty for a crime beyond the

---

[1] We note that there is nothing in the record from the ECRC specifying Her's risk-level status. Instead, the district court apparently relied on a police incident report, the statement of probable cause attached to the criminal complaint, and the presentence investigation report and an accompanying Minnesota Sentencing Guidelines Commission worksheet to conclude that Her was a risk-level-III offender and to impose a 10-year period of conditional release.

[2] The State does not challenge Her's decision to bring his challenge through a Rule 27.03 motion.

3

sentence authorized by "the facts reflected in the jury verdict or admitted by the defendant," must be submitted to a jury and proved beyond a reasonable doubt) (emphasis omitted); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The district court denied the motion, concluding that Her was not entitled to have the jury determine his risk-level status because such a fact did not need to be submitted to a jury under the prior-conviction exception to the Sixth Amendment's jury-trial right. *See, e.g.*, *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998) (holding that, when a prior conviction is a sentence enhancement, rather than an element of the crime, it need not be presented to the jury and proved beyond a reasonable doubt). The court of appeals affirmed. *State v. Her,* 843 N.W.2d 590, 596 (Minn. App. 2014). We granted Her's petition for review.

## II.

The questions presented in this case relate to the scope of the jury-trial right under the Sixth Amendment to the United States Constitution. That right, "a fundamental reservation of power in our constitutional structure," *Blakely*, 542 U.S. at 305-06, "indisputably entitle[s] a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt,' " *Apprendi*, 530 U.S. at 477 (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)).

The Supreme Court of the United States has explained that the Sixth Amendment, as incorporated by the Due Process Clause of the Fourteenth Amendment, places constraints on a court's authority to sentence a defendant. *Blakely*, 542 U.S. at 306; *see also State v. Kuhlmann*, 806 N.W.2d 844, 848 (Minn. 2011) (describing the jury-trial

4

right). Specifically, the scope of a court's sentencing authority "derives wholly from the jury's verdict," *Blakely*, 542 U.S. at 306, meaning that the maximum sentence that a court may impose is limited by "the facts reflected in the jury verdict or admitted by the defendant," *id.* at 303 (emphasis omitted). When a court imposes a sentence "that the jury's verdict alone does not allow," it has exceeded its authority. *Id.* at 304.

In Minnesota, we have applied these principles to limit a sentencing court's authority to impose a sentence that is outside of the presumptive range of the Minnesota Sentencing Guidelines. *See State v. Shattuck*, 704 N.W.2d 131, 141 (Minn. 2005). For felonies other than first-degree murder, the presumptive sentence is "the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." *Id.* (citation omitted) (internal quotation marks omitted). In other words, an upward departure from the presumptive sentence, "based on findings made by the district court, violates the Sixth Amendment right to trial by jury." *Id.* Periods of conditional release, because they are components of a sentence, are subject to a comparable rule. We have held that it violates a defendant's constitutional rights for a court, rather than a jury, to find the facts necessary to impose a conditional-release term. *See State v. Jones*, 659 N.W.2d 748, 752 (Minn. 2003).

In *Jones*, the defendant was convicted of third-degree criminal sexual conduct, Minn. Stat. § 609.344 (2014), and on appeal, he argued that the imposition of a 10-year period of conditional release violated his Sixth Amendment rights. 659 N.W.2d at 750-51. There were two separate legislatively mandated periods of conditional release at issue in *Jones*. The first was authorized by Minn. Stat. § 609.109, subd. 7 (2000)

5

(repealed 2005), which stated that, "[n]otwithstanding the statutory maximum sentence otherwise applicable to the offense or any provision of the sentencing guidelines, . . . [i]f the person was convicted for a violation of section . . . 609.344 . . . the person shall be placed on conditional release for five years." *Jones*, 659 N.W.2d. at 752. We held that the imposition of a 5-year conditional-release term did not violate the Sixth Amendment because it was "authorized on the basis of the jury verdict, and [did] not require any additional findings of fact to be made by the district court." *Id.* at 753.

We reached a different conclusion regarding the second conditional-release term, which the district court imposed under Minn. Stat. § 609.108, subd. 6 (2002) (repealed 2006). The statute required the district court to place Jones on conditional release for 10 years if it found, by a preponderance of the evidence, that (1) his conduct was motivated by sexual impulses or was part of a predatory pattern; (2) he presented a danger to public safety; and (3) he needed long-term treatment or supervision. *Id.* at 751-52. Because the judge's factual findings, not the facts found by the jury, served as the predicate for the second conditional-release term, we concluded that its imposition violated Jones's Sixth Amendment rights. *Id.* at 752, 754.

With those background principles in mind, we must determine whether the conditional-release term imposed in this case exceeded the "statutory maximum," which the Supreme Court has defined for Sixth Amendment purposes as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted). The statute

6

relied upon by the district court to impose a 10-year period of conditional release on Her

provides as follows:

> [n]otwithstanding the statutory maximum sentence otherwise applicable to the offense or any provision of the sentencing guidelines, when a court commits a person to the custody of the commissioner of corrections [for a violation of the registration requirements] and, *at the time of the violation, the person was assigned to risk level III* . . . the court shall provide that after the person has been released from prison, the commissioner shall place the person on conditional release for ten years.

Minn. Stat. § 243.166, subd. 5a (emphasis added).

The jury in this case found that Her committed the offense of failing to register as

a predatory offender when he did not notify the relevant authorities that he had changed

his primary address. *See* Minn. Stat. § 243.166, subd. 3(b). The jury made no finding

regarding whether, "at the time of the violation, [Her] was assigned to risk level III."

Minn. Stat. § 243.166, subd. 5a. It was only at Her's sentencing, after the presentence

investigation report had identified him as a risk-level-III offender, that the court imposed

a 10-year period of conditional release under Minn. Stat. § 243.166, subd. 5a.

Accordingly, Her's sentence exceeded the "statutory maximum" for the offense of

conviction because the court imposed a 10-year period of conditional release based on the

existence of a fact that was not reflected in the jury verdict. *See, e.g., Shattuck*, 704

N.W.2d at 142-43 (holding that, when a jury verdict on first-degree criminal sexual

conduct and kidnapping exposed a defendant only to a presumptive sentence of 161

months, the district court's finding of aggravating factors leading to an additional 30-year

sentence violated the Sixth Amendment).

Rather than apply the broader principles from *Blakely* and *Jones*, the court of appeals accorded decisive significance to the opening clause of the statute, "[n]otwithstanding the statutory maximum sentence otherwise applicable to the offense," to conclude that the statute at issue in this case is analogous to the first statute from *Jones*. *Her*, 843 N.W.2d at 594. Yet the court of appeals made no inquiry, as we did in *Jones*, into whether the jury verdict authorized the sentence. The court's exclusive focus on the similarity of the statutory language, to the exclusion of the relevant principles from *Blakely* and *Jones*, erroneously converted a constitutional inquiry into a purely comparative exercise. Rather than recognizing that the statutory maximum is determinable only by reference to the facts reflected in the jury's verdict, as *Blakely* instructs, the court instead concluded that the statutory maximum always includes a conditional-release term that is set off by the phrase "notwithstanding the maximum sentence otherwise applicable to the offense," regardless of what facts the jury actually found.

Not only is the court of appeals' analysis inconsistent with *Jones* and *Blakely*, it is also in tension with the statute's text. "Notwithstanding," the first word in the statute, means "[i]n spite of." *The American Heritage Dictionary of the English Language* 1206 (5th ed. 2011). The statute therefore means that, "in spite of" the statutory maximum, a court must impose a 10-year period of conditional release whenever it convicts a risk-level-III offender of failing to register. Thus, far from setting the statutory maximum, the statute tells us what the statutory maximum does *not* include: a 10-year conditional-release period. The statutory maximum referred to in the opening clause of the statute

8

must therefore come from the immediately preceding provision, which caps the maximum penalty for an ordinary failure-to-register offense at 5 years in prison and does not include any specified period of conditional release. *See* Minn. Stat. § 243.166, subd. 5.

Rather than relying on the similarity in language to the first statute from *Jones*, the court of appeals should have looked to *State v. Grossman*, which involved a statute providing enhanced prison sentences for specific sex crimes, "notwithstanding the statutory maximum imprisonment penalty otherwise provided for the offense," if certain factors were met. 636 N.W.2d 545, 549 (Minn. 2001) (considering Minn. Stat. § 609.108, subd. 2 (2000) (repealed 2006)). We held that the district court, which had imposed a sentence of 40 years based on facts that were never found by the jury, violated the defendant's constitutional rights because "the jury's guilty verdict [had] exposed [the defendant] to, at most, a 30-year prison term," not to the 40-year prison term he had received.[3] *Grossman*, 636 N.W.2d at 549.

---

[3]      We have identified one other statute that contains similar language to the statute at issue in this case. Minnesota Statutes § 609.3455, subd. 3(a) (2014), provides that, "[n]otwithstanding the statutory maximum penalty otherwise applicable to the offense, the court shall sentence a person to imprisonment for life if the person is convicted" of certain sexual-conduct offenses "and the fact finder determines that a heinous element exists." A second subdivision provides that certain dangerous sex offenders must also be sentenced to life without the possibility of release, "[n]otwithstanding the statutory maximum penalty otherwise applicable to the offense," if the fact finder determines that "two or more heinous elements exist." Minn. Stat. § 609.3455, subd. 2(a)(1) (2014).

     Under the court of appeals' reasoning, which ascribes decisive significance to the "notwithstanding" clause, the statutory maximum for these crimes would be life imprisonment, and it would be unnecessary to submit any of the "heinous elements" to a

(Footnote continued on next page.)

Applying our approach from *Grossman*, the jury's guilty verdict in this case exposed Her to, at most, the presumptive prison term, not to an additional 10-year period of conditional release. Accordingly, consistent with *Blakely*, *Jones*, and *Grossman*, we conclude that the 10-year period of conditional release imposed in this case exceeded the statutory maximum for Her's offense of failing to register as a predatory offender.

III.

The second question presented in this case is whether the risk level assigned to an offender under Minn. Stat. § 244.052, subd. 3(e) (2014), falls within the prior-conviction exception to the Sixth Amendment's jury-trial right. The State argues, and the court of appeals agreed, that Her's designated risk level was so analogous to the fact of a prior conviction that it fell under the "exception to the general rule" that facts used to enhance a sentence must be found by a jury beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 490. The State's argument requires us to determine the outer limits of the prior-conviction exception.

Prior to Her's release from prison, the ECRC was required by statute to assign a risk level to him, based on an individualized, "case-by-case" review of various factors. Minn. Stat. § 244.052, subd. 3(a). A risk-level assignment follows a detailed statutory procedure in which the ECRC considers a host of non-exclusive factors, including the likely seriousness of reoffense, the offender's prior offense history, the offender's

___

(Footnote continued from previous page.)
jury for proof beyond a reasonable doubt. Such an approach would undermine the central rationale of *Blakely* and its progeny.

10

individual characteristics, the availability of community support, and any physical conditions that minimize the offender's risk of reoffense. *Id.*, subd. 3(g). The imposition of a 10-year period of conditional release for failure to register as a predatory offender is entirely dependent on the ECRC's risk-level assessment—specifically, whether it has classified an offender at risk-level III. *See* Minn. Stat. § 243.166, subd. 5a. We have never considered whether this type of fact, a committee's assignment of a risk level to an offender, is the Sixth-Amendment equivalent of a prior conviction.

The prior-conviction exception to the Sixth Amendment's jury-trial right, an exception that the Supreme Court has described as "narrow," *Apprendi*, 530 U.S. at 490, permits a court to find the existence of a prior conviction when sentencing a defendant so long as the prior conviction is not itself an element of the current offense. *See, e.g.*, *Almendarez-Torres*, 523 U.S. at 243-44. The exception is justified in part by "the certainty [of] procedural safeguards attached to any 'fact' of prior conviction." *Apprendi*, 530 U.S. at 488. However, it covers only the fact of the conviction; it does not extend to other facts associated with the conviction, such as "what the jury in a prior trial must have accepted as the theory of the crime" or what the court must have understood about the factual basis of a defendant's plea. *Descamps v. United States*, __U.S.__, __, 133 S. Ct. 2276, 2288 (2013).

In *Descamps*, the Supreme Court admonished a federal appellate court for "flout[ing] [the Court's] reasoning" when it upheld a sentence based on specific, non-elemental factual findings made by a district court regarding a prior conviction, which the district court then used to conclude that the prior conviction was a "violent felony" under

the Armed Career Criminal Act. *Id.* In the Court's view, such a procedure circumvented the Sixth Amendment "by extending judicial factfinding beyond the recognition of a prior conviction." *Id.* The rule the State has proposed, which would require us to extend the prior-conviction exception to facts that are a consequence of, but factually distinct from, a prior conviction, is inconsistent with *Descamps*.

To be sure, we have applied the prior-conviction exception in two decisions, both of which predated *Descamps*, to cover facts beyond the mere "recognition of a prior conviction." In the first case, *State v. Allen*, we held that a defendant's probationary status fell within the prior-conviction exception because it "flowed directly from the sentence for [a] prior conviction." 706 N.W.2d 40, 47-48 (Minn. 2005). We reasoned that "the fact a defendant is on probation at the time of the current offense arises from, and is so essentially analogous to, the fact of a prior conviction, that constitutional considerations do not require it to be determined by a jury." *Id.* at 48. Similarly, in *State v. McFee*, we considered the exception in the context of a prior juvenile adjudication, and held that the fact of the prior adjudication did not require jury fact-finding because "[a] comparison or weighing of bad conduct [was] not required to determine whether a defendant has a juvenile record." 721 N.W.2d 607, 618 (Minn. 2006) (citation omitted) (internal quotation marks omitted). Key to our holding in *McFee* was the fact that it was unnecessary to engage in "a qualitative assessment of behavior" to determine whether a defendant had been delinquent. *Id.*

However, in a third case, *State v. Henderson*, we held that a district court could not, consistent with the requirements of the Sixth Amendment, make a determination that

a defendant's prior convictions formed a "pattern of criminal conduct" under Minnesota's career-offender statute, Minn. Stat. § 609.1095, subd. 4 (2014). 706 N.W.2d 758, 762 (Minn. 2005). We concluded that such a determination required more than simply verifying the fact of one or more prior convictions, and instead involved a qualitative analysis of the underlying convictions to determine whether they formed a "pattern." *Id.* Because "the additional findings involved the comparison and weighing of bad conduct," they went "beyond solely the fact of a prior conviction." *Id.*

The fact found by the district court in this case—that a Department of Corrections committee had assigned a risk-level-III status to Her—is more analogous to the "pattern" determination from *Henderson* than the judicially found facts in *Allen* and *McFee*. Unlike probationary status, a risk-level assessment does not flow directly from the sentence imposed for a prior conviction. *See Allen*, 706 N.W.2d at 47-48. Instead, it is a qualitative assessment made by an agency, not by a court or jury, of the "public risk" posed by an offender, based in part on factors unrelated to the prior conviction. To be sure, there can be no risk-level assignment without a prior conviction. Nevertheless, a causal relationship between a prior conviction and another fact is not enough to satisfy the prior-conviction exception. If it were, then the finding of a "pattern" in *Henderson*, because it was a consequence of Henderson's prior convictions, would arguably have fallen within the prior-conviction exception.

A risk-level assessment is also unlike a prior juvenile adjudication because it is not a "fact of recidivism." *See McFee*, 721 N.W.2d at 611 (stating that it is the "*the fact of recidivism* [that] does not have to be found by a jury in order to be used in sentencing"

13

(emphasis added)).  Rather, a risk-level assessment is a calculation of an offender's *future* likelihood of re-offense and the risk that he or she poses to the community.  In that way, it requires a "comparison and weighing of bad conduct," just like the "pattern" element from *Henderson*.  706 N.W.2d at 762.  Because a Department of Corrections committee makes a "qualitative assessment of behavior" in assigning a risk level, a district court may not make a finding about whether a particular risk level has been assigned without violating the Sixth Amendment.  *McFee*, 721 N.W.2d at 618.

Our reasoning in *McFee* also points to another flaw in the court of appeals' reliance on the prior-conviction exception.  As we stated in *McFee*, the prior-conviction exception hinges on the "procedural safeguards attached" to the fact of a prior conviction.  *Id.* at 611 (quoting *Apprendi*, 530 U.S. at 488); *see also Jones v. United States*, 526 U.S. 227, 249 (1999) (noting that, "unlike virtually any other consideration used to enlarge the possible penalty for an offense . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees").  However, unlike a juvenile adjudication or a jury trial, administrative proceedings are not cloaked with the same procedural safeguards as judicial proceedings.  For example, there is no right to counsel during the administrative-review process, and the ECRC's initial risk-level determination is not subject to any specified burden of proof.  *See* Minn. Stat. § 244.052, subds. 3, 6.

Moreover, a risk-level status is not verifiable by "reviewing court records relat[ed] to [a prior] conviction."  *Allen*, 706 N.W.2d at 48 (citing *Shepard v. United States*, 544 U.S. 13 (2005)).  The court of appeals determined that the difference between an

14

administrative record and a judicial record was not one of constitutional significance because both are state records. *Her*, 843 N.W.2d at 595. However, not all state records are created equal under the Sixth Amendment. In fact, the Supreme Court has held that a sentencing court cannot rely on police reports to determine whether a prior conviction qualifies as a "violent felony" because such reports are "too far removed from the conclusive significance of a prior judicial record." *Shepard*, 544 U.S. at 25 (plurality opinion). Instead, a sentencing court's inquiry is limited "to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26 (opinion of the court) (applying the constitutional-doubt canon); *id.* at 28 (Thomas, J., concurring) ("[P]ermitting sentencing courts to look beyond charging papers, jury instructions, and plea agreements to an assortment of other documents such as complaint applications and police reports . . . give[s] rise to constitutional error . . . ."). *Shepard*'s reasoning applies with equal, if not more, force to an administrative record, like the one at issue here, produced after an administrative-review committee considered a host of statutory factors that have only an attenuated connection to the fact of prior conviction.

Nevertheless, relying on *McFee*, the State insists that the verification of the existence of an offender's risk level is akin to confirming the existence of a prior conviction because the "role for a jury would be extremely limited," *McFee*, 721 N.W.2d at 618. It is true that a jury simply would need to verify the existence of Her's risk-level status by reviewing documentary evidence. The prior-conviction exception, however, is,

as its name suggests, for prior convictions, not for easily verifiable facts. We therefore are unwilling to expand the prior-conviction exception to encompass facts—even those that are easily verifiable—that are established by extra-judicial records. *See, e.g.*, *United States v. Dean*, 604 F.3d 169, 173 (4th Cir. 2010) ("*Shepard*'s Sixth Amendment holding was meant to ensure that judges do not 'smuggle in contraband facts . . . .' " (quoting *United States v. Thompson*, 421 F.3d 278, 282 (4th Cir. 2005))); *Butler v. Curry*, 528 F.3d 624, 645 (9th Cir. 2008) ("[T]he narrow prior conviction exception applies only to facts directly reflected in the documents of conviction. . . .").

## IV.

For the foregoing reasons, we reverse the decision of the court of appeals, vacate Her's 10-year conditional-release term, and remand to the district court for further proceedings consistent with this opinion.[4]

Reversed and remanded.

---

[4] Because neither party has addressed, nor did we grant review on, the appropriate remedy for the constitutional violation in this case, we express no opinion on the subject and leave it to the district court on remand to determine the remedy. *See, e.g., Hankerson v. State*, 723 N.W.2d 232 (Minn. 2006); *State v. Jones*, 659 N.W.2d 748 (Minn. 2003).