# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0906

Willie Edd Reynolds, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 25, 2016**
**Reversed and remanded**
**Ross, Judge**

Hennepin County District Court
File No. 27-CR-08-38331

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Hooten, Judge; and Smith, Judge.

## S Y L L A B U S

A motion to correct a sentence under rule 27.03, subdivision 9, is a proper mechanism for a convicted person to challenge the district court's decision to amend his sentence *sua sponte* by adding a statutorily required conditional-release term.

**O P I N I O N**

**ROSS**, Judge

Willie Reynolds pleaded guilty to failure to register as a predatory offender. The district court amended Reynolds's sentence *sua sponte* three months after sentencing him, adding a ten-year conditional-release term based on the court's implicit finding that Reynolds was a risk-level-III offender. Four years later Reynolds moved to vacate that term of his sentence under Minnesota Rule of Criminal Procedure 27.03, subdivision 9. The district court converted the rule 27.03 motion to a petition for postconviction relief and denied it as time-barred under the postconviction statute. Because we conclude that Reynolds could bring his sentencing challenge under rule 27.03 and that the judicial fact-finding that supported the conditional-release term violated Reynolds's Sixth Amendment right to a jury fact-finding, we reverse and remand.

**FACTS**

In August 2008 Willie Reynolds was charged with failure to register as a predatory offender in violation of Minnesota Statutes section 243.166, subdivision 5(a) (2006). Reynolds pleaded guilty. The district court applied a downward durational departure based on Reynolds's willingness to take responsibility for his actions and sentenced him to a year and one day in prison. But the district court did not impose any conditional-release term to follow the incarceration. Three months after the sentencing, the district court—acting *sua sponte* and without conducting a resentencing hearing—amended Reynolds's sentence by adding a ten-year conditional-release term under Minnesota Statutes section 243.166, subdivision 5a (2006), apparently on the finding that Reynolds was a risk-level-III offender

2

under Minnesota Statutes section 244.052 (2006) at the time Reynolds committed his crime.

Four years later, in October 2013, Reynolds moved the district court to correct his sentence under criminal procedural rule 27.03, subdivision 9. He asked the district court to vacate the conditional-release term because it was not supported by a jury's finding that he was a level-III offender and he had not waived his *Blakely* right to a jury determination of this fact that led to the additional sentence term. The district court did not consider the request as a motion under rule 27.03, however, deeming it better suited as a petition for postconviction relief. The district court then held that Reynolds's challenge is time-barred under Minnesota Statutes section 590.01, subdivision 4(a) (2012). The district court nonetheless considered the merits of Reynolds's request, and it held that its imposition of the conditional-release term without a jury finding of Reynolds's offender level did not implicate Reynolds's Sixth Amendment rights under the rule announced in *Blakely*. It reasoned that an offender's risk-level status is akin to an offender's prior conviction, and caselaw establishes that a district court can determine on its own whether an offender has incurred a sentence-enhancing prior conviction.

Reynolds appeals.

3

## ISSUES

I.      Was Reynolds's motion to correct his sentence under criminal procedural rule 27.03, subdivision 9, a proper mechanism for his *Blakely* challenge to the district court's decision to amend his sentence and add a ten-year conditional-release term to his incarceration period?

II.      Did the district court violate Reynolds's Sixth Amendment right to a jury under *Blakely v. Washington* by adding a conditional-release term to Reynolds's prison sentence after relying on the court's own finding that Reynolds was a risk-level-III offender?

III.      If the district court violated Reynolds's Sixth Amendment right to a jury, what is the proper remedy?

## ANALYSIS

### I

Reynolds argues that the district court erroneously denied his sentencing challenge as time-barred. The district court treated Reynolds's ostensible rule 27.03 motion as though it were a petition for postconviction relief under Minnesota Statutes section 590.01 (2012). It then held that the challenge is time-barred because Reynolds filed it more than four years after his sentence and conviction became final—long after the deadline allowing the statutory challenge. Reynolds's argument requires us to interpret the rule, a task we undertake de novo. *State v. Martinez-Mendoza*, 804 N.W.2d 1, 6 (Minn. 2011).

The district court correctly observed that the manner in which Reynolds's challenge is framed (as a challenge under the statute or a challenge under the rule) is significant. This is because a district court may not consider a statutory postconviction petition if it was "filed more than two years after . . . the entry of judgment of conviction or sentence if no direct appeal is filed." Minn. Stat. § 590.01, subd. 4(a). In contrast, the criminal rule

4

provides that a district court "may *at any time* correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9 (emphasis added). Because Reynolds filed his challenge more than two years after the statute's general deadline, his challenge might never be decided on the merits if it rests on the statute rather than on the rule. We must therefore answer whether Reynolds's challenge can rest only on the statute rather than on the rule.

The supreme court's decision in *State v. Her*, 862 N.W.2d 692 (Minn. 2015), might at first seem to answer the issue. The *Her* court considered the same substantive question that Reynolds raises—whether the determination of a defendant's status as a risk-level-III offender is, under the Sixth Amendment, required to be found by a jury before the district court can impose the ten-year, statutorily mandated conditional-release period. *Id.* at 694. And the court considered the question based on the defendant's motion to challenge his sentence specifically under rule 27.03. *Id.* But even as it considered the challenge under the rule, the *Her* court implicitly warned not to assume that it was necessarily approving of rule 27.03 as the proper vehicle for the challenge. It expressly noted, "The State does not challenge Her's decision to bring his challenge through a Rule 27.03 motion." *Id.* at 694 n.2. Whether the challenge can be brought under rule 27.03 therefore remains open.

The answer depends on the nature of Reynolds's challenge. We have held that the two-year statutory time limit does not apply to or restrict motions "properly filed" under rule 27.03. *Vazquez v. State*, 822 N.W.2d 313, 318 (Minn. App. 2012). And a motion is properly filed under the rule if the offender challenges a sentence on the grounds that "the sentence is contrary to an applicable statute or other applicable law." *Washington v. State*, 845 N.W.2d 205, 213 (Minn. App. 2014); *see also Vazquez*, 822 N.W.2d at 318 (holding

5

that a challenge to a sentence based on the district court's incorrect calculation of the offender's criminal-history score was properly raised under rule 27.03); *State v. Amundson*, 828 N.W.2d 747, 751 (Minn. App. 2013) (holding the same for a challenge based on an unauthorized upward departure at sentencing). The supreme court has held that a challenge is not properly filed under rule 27.03 when it implicates more than simply the sentence and instead effectively challenges the validity of the underlying conviction or plea agreement. *State v. Coles*, 862 N.W.2d 477, 480–81 (Minn. 2015); *see also Wayne v. State*, 870 N.W.2d 389, 391–92 (Minn. 2015) (applying *Coles* and deeming the claim outside the rule because a victory would have entitled the claimant to "a new trial, not a reduced sentence").

It is clear to us that Reynolds's *Blakely* challenge does nothing to implicate his plea or his conviction. He seeks only to remove a term of his sentence and he does so only on the theory that he was unconstitutionally sentenced. Even if he prevails, his plea and conviction are unaffected. Under this assessment, it appears that Reynolds properly brought his challenge under the rule.

The state urges us to focus closely on the language of the rule, and in particular the rule's permission for the court to correct a sentence that is "not authorized *by law*." The state argues that this language ("by law") contemplates challenges only to sentences "for which there was no legal authority." The state maintains that Reynolds's challenge does not essentially claim that the district court imposed a sentence that is "not authorized," but that the court imposed a statutorily authorized sentence that resulted merely from an allegedly unauthorized sentencing procedure. The state buttresses its textual argument with language in *Blakely* and in this state's supreme court decision of *State v. Chauvin*, 723

6

N.W.2d 20 (Minn. 2006). The state quotes the *Blakely* holding that "the State's sentencing *procedure* did not comply with the Sixth Amendment." *Blakely v. Washington*, 542 U.S. 296, 305, 124 S. Ct. 2531, 2538 (2004) (emphasis added). And it quotes the *Chauvin* court's description of *Blakely*, in its observation that "*Blakely* did not remove the ability of a judge to impose an aggravated sentence, it only changed *the process* by which aggravated sentences may be imposed," and that *Blakely* "merely changed the steps that the court took in arriving at *a sentence already authorized by the legislature*." *Chauvin*, 723 N.W.2d at 25 (emphasis added). Because Reynolds's ten-year conditional -release term is "a sentence already authorized by the legislature," (and, as the state points out, a ten-year release term is actually *mandated* by the legislature for risk-level-III offenders, *see* Minn. Stat. § 243.166, subd. 5a (stating that if "at the time of the violation, the person was assigned to risk level III . . . the court shall provide that . . . the commissioner shall place the person on conditional release for ten years")), the state maintains that Reynolds's challenge is not truly one that seeks to vacate a sentence "not authorized by law."

We see two problems with the state's plain-language argument. We address them both.

The first problem with the state's plain-language argument is that it does not carefully consider the rule's plain language. The rule does not expressly restrict itself to challenges to sentences that are "not authorized *by the legislature*," as the state implies; the rule instead allows for challenges to sentences that are, more broadly, "not authorized *by law*." The federal and state constitutions articulate the court's limited authority to impose a criminal sentence, and those documents allow district courts to sentence a defendant only

7

to the extent the legislature has generally authorized and only to the extent a jury has specifically authorized. Reynolds is essentially arguing that the district court imposed a sentence not authorized by law because the sentence includes a term that depends on a fact not found by the jury. Because Reynolds's challenge questions the legality of his sentence and does not even remotely implicate either his conviction or the procedure leading to his conviction, we conclude that his challenge fits both the plain language of rule 27.03 and the caselaw that has construed the rule. He may therefore bring his challenge under the rule.

The second problem with the state's plain-language argument is that an attempt to distinguish between a sentence that allegedly exceeds the legislative authority and one that allegedly exceeds a district court's constitutional authority is undermined by *Blakely* itself. As the state supreme court recently pointed out, the *Blakely* Court "has defined ['statutory maximum'] for Sixth Amendment purposes as the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Her*, 862 N.W.2d at 696 (quotation omitted); *see also State v. Shattuck*, 704 N.W.2d 131, 141–42 (Minn. 2005) (holding that the presumptive sentencing range in the Minnesota Sentencing Guidelines determines the maximum sentence a district court may impose without additional fact-finding). So even if the rule applies only to allegations that the district court imposed a sentence exceeding the statutory maximum, Reynolds's motion fits the rule.

Although we rest on the language of rule 27.03, our reasoning finds support in the treatment of a similar, albeit not identical, federal procedural rule. We have considered that

"[t]he pertinent portion of Minnesota's rule is modeled after a federal rule of criminal procedure, as it existed before the federal sentencing guidelines." *Washington*, 845 N.W.2d at 213. For convictions before 1987, rule 35 of the Federal Rules of Criminal Procedure provided in part, "The court may correct an illegal sentence at any time . . . ." Fed. R. Crim. P. 35 (1982). The Supreme Court stated that sentences subject to correction under the rule are "those that the judgment of conviction did not authorize." *United States v. Morgan*, 346 U.S. 502, 506, 74 S. Ct. 247, 250 (1954). The narrow function of rule 35 was to permit correction of an illegal sentence, "not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence." *Hill v. United States*, 368 U.S. 424, 430, 82 S. Ct. 468, 472 (1962).

Rather than restrict the federal rule to allow only challenges to sentences that exceeded the statutory limits of the underlying crime, the Supreme Court more broadly explained that a sentence could not be "illegal" under the rule if "[t]he punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself legally *or constitutionally invalid in any other respect*." *Id.* (emphasis added). It is true that federal courts interpreting the *Hill* Court's language did not allow for just any constitutional sentence-related challenge under the rule. *See, e.g.*, *United States v. Peltier*, 312 F.3d 938, 942 (8th Cir. 2002) (holding that petitioner's challenge that "his sentences were imposed in violation of his due process rights because they were based on information that was false due to government misconduct" was not a challenge to an "illegal sentence" under rule 35). But the federal circuit courts did interpret *Hill* to mean that a rule 35 challenge to a sentence

9

could rest on a claim of a double jeopardy violation. *See, e.g.*, *United States v. Pavlico*, 961 F.2d 440, 443 (4th Cir. 1992). In 1987, long before *Blakely*, Congress amended rule 35 to remove the provision allowing district courts to correct an illegal sentence, and we are aware of no federal caselaw considering whether the rule was ever applied to challenges to sentences that arose from the district court's allegedly exceeding its constitutional sentencing authority in any way analogous to a *Blakely* challenge. But we are satisfied that the federal courts understood the old federal rule in the same way we are applying rule 27.03 today. That is, a challenge to a sentence as an illegal sentence or a sentence not authorized by law includes more than claims that the sentence exceeds the length allowed by statute.

Having determined that Reynolds's sentencing challenge fits the challenges contemplated by rule 27.03, we turn to the district court's alternative holding based on the merits of the challenge.

## II

As we have said, the supreme court has had the opportunity to decide the ultimate legal question that Reynolds raises in his rule 27.03 motion. In *State v. Her*, the court held that, in keeping with a defendant's Sixth Amendment right to a jury trial, a district court can impose a ten-year conditional-release term based on a defendant's status as a risk-level-III offender only if the status has been either admitted by the defendant or found by a jury. 862 N.W.2d at 696. The district court here reached a different conclusion based on an unpublished 2013 court of appeals opinion that, like the district court's decision, preceded the supreme court's holding in *Her*. Applying *Her*, we hold that the district court's

imposition of the conditional-release term with neither an admission nor a jury finding of Reynolds's offender status level violated Reynolds's *Blakely* rights. We therefore reverse that part of Reynolds's sentence.

## III

The only remaining issue is the remedy. The *Her* court noted that it was expressing no opinion on the proper remedy, observing that "neither party has addressed, nor did we grant review on, the appropriate remedy for the constitutional violation." *Id.* at 700 n.4. It therefore remanded only with the general direction that the district court engage in "further proceedings consistent with [the] opinion." *Id.* at 700.

We are in a somewhat similar situation on the question of remedy, and we likewise will return the case to the district court without specifying the particular remedy. Reynolds argues that we should prohibit the district court from impaneling a sentencing jury to determine his risk level because allowing the sentencing jury to determine the fact at this juncture would constitute a double jeopardy violation. But Reynolds does not develop the argument clearly enough for us to issue an opinion resolving it. And we observe that in our prior decisions involving *Blakely* violations, we have placed no similar limitation on the district court. *See, e.g.*, *State v. Ayala-Leyva*, 848 N.W.2d 546, 559 (Minn. App. 2014), *review denied* (Minn. Aug. 11, 2015); *State v. Wiskow*, 774 N.W.2d 612, 620 (Minn. App. 2009). More specifically, the supreme court decision in *State v. Hankerson* authorized the retrospective use of a sentencing jury after finding a *Blakely* violation, and in doing so it carefully considered but rejected Hankerson's argument that a resentencing hearing would constitute a violation of Hankerson's right not to be subjected to double jeopardy. 723

11

N.W.2d 232, 240 (Minn. 2006). Reynolds attempts to distinguish *Hankerson* and asserts that the *Hankerson* court's discussion leaves the door open for a double jeopardy restriction in this circumstance. The state thoroughly discusses the issue, but it focuses substantially on the district court's inherent authority to impanel a sentencing jury; that original authority does not answer what should be the appropriate remedial authority of the district court following a violation. Under these circumstances, we believe the best approach is to allow the parties the opportunity to develop the issue of the appropriate remedy more completely and precisely in the district court, without prejudice to the theories presented but not fully analyzed on appeal. We therefore leave it to the district court to first determine the appropriate remedy on remand after the parties have had the opportunity to develop their positions.

## D E C I S I O N

Rule 27.03 is a mechanism through which Reynolds properly raised his *Blakely* challenge, and the district court erred by treating his challenge as time-barred under the postconviction statute and also by rejecting it on the merits. Because Reynolds's risk level at the time of the violation was neither found by a jury nor admitted by Reynolds before sentencing, we reverse and remand for resentencing consistent with this opinion.

**Reversed and remanded.**