*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1743**

Colleen Marie Berg, petitioner,
Respondent,

vs.

Michael Vincent Flaherty,
Appellant.

**Filed June 13, 2016**
**Affirmed**
**Smith, Tracy, Judge**

Dakota County District Court
File No. 19WS-CV-15-538

Kyle D. White, St. Paul, Minnesota (for respondent)

Samuel J. Edmunds, Sieben Edmunds PLLC, Mendota Heights, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Smith, Tracy, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY**, Judge

Appellant Michael Vincent Flaherty challenges the district court's grant of a harassment restraining order (HRO) to respondent Colleen Marie Berg for more than two years. Because the record supports both the issuance of the HRO and the district court's

finding that Flaherty violated a prior restraining order on two or more occasions, we affirm.

## FACTS

Flaherty and Berg were divorced in December 2012. During the divorce proceeding, Berg obtained a restraining order against Flaherty. After the divorce was finalized, she obtained an ex parte HRO and, following a hearing, an HRO against him. According to Berg, Flaherty repeatedly violated these orders. Flaherty was charged in four criminal cases and entered *Alford* pleas to one count of contempt of court for willfully disobeying a court mandate and three counts of violating a restraining order.[1]

When the HRO was set to expire, Berg petitioned for a new HRO against Flaherty. Berg requested a 2-year HRO or, if Flaherty requested a hearing, a 50-year HRO because she had two or more prior HROs against Flaherty and Flaherty had violated the orders on two or more occasions.

The district court granted an ex parte HRO, finding that there were reasonable grounds to believe that Flaherty had (1) followed, pursued, or stalked Berg; (2) frightened Berg; (3) taken pictures of Berg and posted them online without her permission; and (4) sent harassing e-mails about Berg to third parties. Flaherty then requested a hearing.[2]

---

[1] An *Alford* plea permits a defendant to plead guilty while maintaining innocence because the record contains sufficient evidence to support a conviction. *State v. Theis*, 742 N.W.2d 643, 647 (Minn. 2007); *see North Carolina v. Alford*, 400 U.S. 25, 38, 91 S. Ct. 160, 168 (1970).

[2] In his statement of facts, Flaherty appears to challenge the fairness of the hearing, stating that his "testimony was cut short," that he was not allowed "to testify in the narrative," and that he was not allowed to offer a closing argument. But because Flaherty

Following the hearing, the district court granted Berg's petition for an HRO, finding that Flaherty had engaged in harassment of Berg by (1) appearing at church on Wednesdays during Berg's parenting time; (2) attending the children's activities during Berg's parenting time; (3) engaging in threatening conduct toward Berg and her then-fiancé at the parties' daughter's band concert; (4) sending inappropriate e-mails and text messages to community members regarding Berg; and (5) posting a picture of Berg on his Facebook page. The district court also found that Flaherty had "violated a prior or existing restraining order on two or more occasions" and ordered the HRO to remain in effect until September 5, 2022, the day after the parties' twin children turn 19.

Flaherty appeals.[3]

---

makes no argument about these alleged facts in the argument section of his brief, questions about the hearing procedure are not properly before this court. *See In re Application of Olson for Payment of Servs.*, 648 N.W.2d 226, 228 (Minn. 2002) (explaining that "issues not argued in the briefs are deemed waived on appeal" and that "the threshold is whether an argument was addressed in the argument portion of the brief" (quotations omitted)). We note, however, that the record does not support Flaherty's assertions. The district court allowed Flaherty to introduce evidence and to cross-examine Berg, urged Flaherty to testify because "we have all the time in the world," and asked Flaherty if there was "anything else that [he'd] like to tell [the court.]" We can discern no error in the district court's management of the hearing.

[3] Berg argues that Flaherty's arguments are not properly before this court because he did not make them before the district court. But Flaherty, acting pro se, challenged Berg's testimony and provided explanations for his behavior. He also challenged the evidence of his prior violations, explaining that the complaints were "unright" and that he had made *Alford* pleas. We conclude that Flaherty has not forfeited his arguments regarding the sufficiency of the evidence for the HRO and the extension of the HRO beyond two years.

# DECISION

## I.

Flaherty challenges the sufficiency of the evidence for the HRO. We review the district court's grant of an HRO for an abuse of discretion, but we will reverse if the issuance of the HRO is not supported by sufficient evidence. *Kush v. Mathison*, 683 N.W.2d 841, 843-44 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). "A district court's findings of fact will not be set aside unless clearly erroneous, and due regard is given to the district court's opportunity to judge the credibility of witnesses." *Id.* "Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (quotation omitted).

A district court may issue an HRO if it finds "that there are reasonable grounds to believe that the respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). "Harassment" is defined in relevant part as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." Minn. Stat. § 609.748, subd. 1(a)(1) (2014). The statute "requires both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person subject to harassing conduct." *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006).

4

Flaherty argues that the five incidents the district court relied upon to issue the HRO do not meet the statutory definition of harassment.

### A. E-mails to Community Members

The district court found that Flaherty harassed Berg by sending e-mails and text messages to community members regarding Berg and the parties' divorce. The record contains the relevant e-mails, which refer to Berg's "current unhealthy male friend"; discuss Berg's "hormones"; allege that Berg is sleeping with her fiancé while the kids are at her house; assert that the fiancé lured Berg to a tent "multiple times during the work week" during the parties' marriage; state that Berg "is not in a healthy place"; request help getting Berg to attend marriage counseling even though the parties' divorce was already finalized; and request that the recipients not support Berg's new relationship.

Despite the "inappropriate and highly personal information" disclosed, Flaherty argues that he only intended to "communicate[] his viewpoints to members of their mutual community" and "notify community members of what he believed to be inappropriate conduct by the fiancé." But Flaherty alleged intimate details about Berg's personal life and new relationship and described her as hormonal and "not in a healthy place." Characterizing these communications as "viewpoints" makes them no less intrusive. We conclude that the record supports a finding that Flaherty's conduct was "objectively unreasonable." *See id.*

We also conclude that the record supports a finding that Berg's belief that the conduct was harassing was "objectively reasonable." *See id.* Berg testified that she believed that the messages invaded her privacy and interfered with her social

5

relationships.  In addition, Berg felt embarrassed when the e-mail recipients disclosed the messages to her.

We conclude that the record amply supports the district court's finding that Flaherty's inappropriate e-mails to community members had "a substantial adverse effect" on Berg's privacy.  *See* Minn. Stat. § 609.748, subd. 1(a)(1).

**B.  Band-Concert Incident**

In March 2015, Berg, her fiancé, and the parties' son entered the school parking lot to attend the parties' daughter's band concert.  According to Berg, Flaherty pulled his vehicle behind their car and blocked it in.  Berg testified that Flaherty then repeatedly threatened Berg's fiancé, both in the parking lot and inside the school building.  Flaherty, on the other hand, testified that he only tried to give Berg's fiancé "notification" that he was not welcome at the concert.  Although Flaherty did not threaten Berg and instead "kept trying to evade" Berg to avoid violating the existing HRO, Berg was present for the entire incident.  Berg testified that the incident was "very stressful" and that she "was frightened."

The district court found that this incident constituted harassment because Flaherty "engaged in hostile, threatening conduct toward [Berg] and her fiancé . . . both in the parking lot and in the school building, thereby frightening [Berg.]"

Flaherty argues that the district court's finding is clearly erroneous because he did not direct his communications to Berg.  We note that, to issue a new HRO, the district court was only required to find "reasonable grounds to believe that [Flaherty] has engaged in harassment."  *See* Minn. Stat. § 609.748, subd. 5(b)(3).  Although Flaherty

6

did not directly communicate with Berg, the district court found that his behavior had "a substantial adverse effect" on Berg's "safety, security, or privacy." *See id.*, subd. 1(a)(1). In finding that the band-concert incident constituted harassment, the district court necessarily found Berg's testimony more credible. We give "due regard . . . to the district court's opportunity to judge the credibility of witnesses." *Kush*, 683 N.W.2d at 843-44.

We conclude that the record supports a finding that Flaherty's conduct at the band concert was "objectively unreasonable" and that Berg's belief as to harassing conduct was "objectively reasonable." *See Dunham*, 708 N.W.2d at 567. Flaherty blocked the vehicle Berg was riding in; gestured aggressively; attempted to "give a notification" to Berg's fiancé that he was not welcome at the concert, even though there was no order prohibiting the fiancé from being there; and continued "yelling" at Berg's fiancé inside the building. Berg was present throughout the incident. We conclude that the record amply supports the district court's finding that Flaherty's behavior had "a substantial adverse effect . . . on [Berg's] safety, security, or privacy." *See* Minn. Stat. § 609.748, subd. 1(a)(1).

Harassment requires "repeated incidents." *Id.* Because the record supports the district court's findings of two incidents, we conclude that the district court did not clearly err in finding that Flaherty harassed Berg and we need not consider the district court's other findings in support of the HRO. Having found harassment, the district court did not abuse its discretion by issuing the HRO.

**II.**

Flaherty challenges the district court's decision to issue the HRO for more than two years. Normally, an HRO is granted "for a fixed period of not more than two years." Minn. Stat. § 609.748, subd. 5(b) (2014). But if "the petitioner has had two or more previous restraining orders in effect against the same respondent or the respondent has violated a prior or existing restraining order on two or more occasions, relief granted by the restraining order may be for a period of up to 50 years." *Id.*

The district court found that Flaherty had "violated a prior or existing restraining order on two or more occasions." In making this finding, the district court took judicial notice of Flaherty's four criminal cases arising from his violations of prior HROs. The district court did not abuse its discretion by taking judicial notice of those criminal files. *See* Minn. R. Evid. 201 (addressing judicial notice); *In re Zemple*, 489 N.W.2d 818, 820 (Minn. App. 1992) (explaining that the district court did not abuse its discretion by taking judicial notice of findings made in a previous proceeding).

But Flaherty argues that his criminal files cannot establish violations of prior or existing restraining orders because he always maintained his innocence and only resolved the charges through *Alford* pleas. In an *Alford* plea, a defendant pleads guilty while maintaining his innocence. *Theis*, 742 N.W.2d at 647. The guilty plea must be supported by "a strong factual basis," and the defendant must agree that the state's evidence is sufficient to convict him. *Id.* at 649. Although Flaherty is correct that our record does not include Flaherty's plea colloquies, Flaherty makes no argument that his *Alford* pleas were improper or that he failed to acknowledge that the state's evidence in the four cases

8

was sufficient to convict him. Because the district court accepted Flaherty's *Alford* pleas in the criminal cases, we can infer that Flaherty agreed that the evidence was sufficient to convict him of violating the prior orders. *See id.* And because the evidence was sufficient to support Flaherty's criminal convictions, it was necessarily sufficient to allow the district court in the current civil proceeding to find that Flaherty violated the prior HROs. *Compare State v. Her*, 862 N.W.2d 692, 695 (Minn. 2015) (explaining that a criminal conviction requires proof beyond a reasonable doubt), *with* Minn. Stat. § 609.748 (2014) (not identifying a standard of proof for HROs), *and State by Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 790 (Minn. 1993) (stating that statutory silence regarding a standard of proof "is regarded as a signal that the legislature intended the preponderance of the evidence standard" to apply).

Flaherty also argues that the criminal files cannot establish violations because they were "disposed of . . . with stays of adjudication" and no convictions were entered. Flaherty is incorrect that a stay of adjudication is the same as a continuance for dismissal. *See State v. Strok*, 786 N.W.2d 297, 301 (Minn. App. 2010) (explaining that a stay of adjudication occurs after a defendant's guilty plea or a finding of guilt and a continuance for dismissal occurs before any determination of guilt). Moreover, the statute here does not require evidence of prior convictions or sentences. Minn. Stat. § 609.748, subd. 5(b) only requires the district court to find that "the respondent has violated a prior or existing restraining order on two or more occasions." The district court made such a finding. The acceptance of Flaherty's *Alford* pleas in four criminal cases provides ample evidence that

9

Flaherty "violated a prior or existing restraining order on two or more occasions." *See* Minn. Stat. § 609.748, subd. 5(b).

We conclude that the district court did not abuse its discretion by taking judicial notice of the four criminal cases against Flaherty and by concluding that Flaherty had "violated a prior or existing restraining order on two or more occasions." *See id.* The district court therefore did not abuse its discretion by granting the HRO for more than two years. *See id.*

**Affirmed.**